ARGYLE ISD V. WOLF

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-336-CV

ARGYLE INDEPENDENT SCHOOL DISTRICT, APPELLANT/APPELLEE

BY AND THROUGH ITS BOARD OF TRUSTEES

V.

JEFFREY J. AND JANICE WOLF, APPELLEES/APPELLANTS

ON BEHALF OF THEIR MINOR CHILDREN,

AND ALLEN AND VICKI ZIMMERMAN, ON

BEHALF OF THEIR MINOR CHILDREN

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

Introduction

This is an appeal from the trial court’s imposition of a temporary injunction against appellant and cross-appellee Argyle Independent School District (AISD).  The injunction enjoins AISD from prohibiting the minor children of appellees and cross-appellants Jeffrey J. and Janice Wolf and Allen and Vicki Zimmerman (appellees)—who do not live within AISD boundaries—from attending AISD schools during the 2006-07 school year unless appellees pay tuition of $6,487.50 per child, and from retaliating against those children because of appellees’ filing of the underlying suit.  In three issues, AISD contends that the trial court abused its discretion by entering the temporary injunction because appellees presented no evidence of a probable right to relief on any of their causes of action; because appellees presented no evidence that they faced a probable, imminent, and irreparable injury absent an injunction; and because the evidence showed that appellees are not entitled to equitable relief in that they have unclean hands.  In one cross-issue, appellees claim that the trial court abused its discretion by declining to enjoin the AISD Board of Trustees from interfering with appellees’ appeal of a Denton Independent School District (DISD) decision declining to detach the street on which appellees live from DISD’s boundaries.  That appeal is pending before the Texas Commissioner of Education.
(footnote: 1)  We reverse and remand.

Background

Appellees Jeffrey and Janice Wolf moved to the Estates at Tour 18 subdivision in Flower Mound in May 2002, and appellees Allen and Vicki Zimmerman moved there in 2003.  Both families purchased homes on Firestone Drive.  The Wolfs were told by their realtor and the developer of the subdivision that the entire subdivision, including their home on Firestone Drive, was included within the boundaries of AISD.  One reason the Wolfs and Zimmermans moved to Firestone Drive was so that their children could attend AISD schools. 

Kathy Jessen, an employee in the office of the elementary school that the children living in Tour 18 attended, told Janice that the Wolfs’ house was located in AISD.
(footnote: 2)  Janice then enrolled her three children in AISD schools.  The Wolf children have been attending AISD schools since the 2002-03 school year.  The Zimmermans were told the same thing and also enrolled their children in AISD schools.
(footnote: 3)  Their children have been attending AISD schools since the 2003-04 school year.  They never registered their children as transfer students, nor were they told they needed to do so.  Moreover, they were never charged tuition for their children to attend AISD schools.

In September 2005, AISD Superintendent Carolyn Pierel received a complaint that children living on Firestone Drive were allowed to attend AISD schools for free even though the houses on one side of that street were located in DISD and the residents paid taxes to DISD, not AISD.
(footnote: 4)  In response to the complaint, Superintendent Pierel confirmed that one side of Firestone Drive was located in DISD instead of AISD and determined which children living on Firestone Drive were attending AISD.  She then contacted Miriam Pierce, another resident of Firestone Drive whose daughter had been attending AISD schools for several years.  As a result of that call, Pierce circulated a petition to Firestone Drive residents asking DISD to release Firestone Drive from its boundaries and asking AISD to annex Firestone Drive.
(footnote: 5)  The Wolfs and Zimmermans signed the petition.  On April 17, 2006, the AISD Board of Trustees voted to approve the petition to annex Firestone Drive into the district.  DISD had not yet voted on the residents’ request to detach the street from its boundaries.  

In the spring of 2006, before the 2005-06 school year ended, appellees preregistered their children with AISD for the 2006-07 school year.  On the Affidavit of Residency forms, Janice listed “Argyle” in response to the question, ”School District you reside in.”  Vicki left the answer blank on the forms for two of her children, but she wrote in “Argyle” on the form for her third child.  AISD did not demand tuition at the time, nor did it require appellees to register their children as transfer students.  Superintendent Pierel admitted that AISD accepted the children’s preregistration.

The next month, DISD rejected the Firestone Drive residents’ transfer petition on May 16, 2006.  The Wolfs and Zimmermans appealed that decision to the Texas Commissioner of Education.

On June 19, 2006, the AISD Board passed a resolution to allow children of the then-current residents of Firestone Drive to attend AISD schools as transfer students so long as they paid tuition.
(footnote: 6)  Although the agenda for the meeting had been posted at the administration building, the wrong agenda had been posted on AISD’s website, and the Wolfs and Zimmermans did not know about the meeting until the day it was held.  The Wolfs attended the meeting.   On July 26, 2006, nineteen days before school was to begin on August 14, Superintendent Pierel sent appellees letters stating that tuition for the 2006-07 school year would be $6,487.50 per child, requesting payment in full before the first day of school, and enclosing a transfer application.  The Wolfs were out of town at the time.  Appellees did not complete the transfer paperwork or pay tuition; instead, they filed suit “seeking to prevent [AISD] from treating them as non-residents and charging them tuition.”  Appellees sought a declaratory judgment as well as temporary and permanent injunctive relief.

The trial court granted appellees’ request for a TRO on August 10, 2006, enjoining AISD from “denying [appellees’] minor children public education by wrongfully requiring payment of tuition and/or by requiring [appellees’] minor children to be enrolled as transfer students prior to attending school commencing on August 14, 2006.”  After an evidentiary hearing held in August 2006, the Wolfs and the Zimmermans agreed to deposit the requested tuition into the court registry in monthly installments, and the trial court entered a temporary injunction on September 11, 2006 enjoining AISD from (1) denying public education and services to appellees’ children during the 2006-07 school year and (2) retaliating against the children because of the filing of the suit.
(footnote: 7)
Standard of Review

To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim.  
Butnaru v. Ford Motor Co
., 84 S.W.3d 198, 204 (Tex. 2002); 
Fox v. Tropical Warehouses, Inc
., 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.).  A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it.  
Fox
, 121 S.W.3d at 857; 
Miller Paper Co. v. Roberts Paper Co
., 901 S.W.2d 593, 597 (Tex. App.—Amarillo 1995, no writ).  An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard.  
Butnaru
, 84 S.W.3d at 204; 
Fox
; 121 S.W.3d at 857; 
see T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc
., 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d).

The purpose of a temporary injunction is to preserve the status quo until a trial on the merits.  
Butnaru
, 84 S.W.3d at 204; 
Walling v. Metcalfe
, 863 S.W.2d 56, 58 (Tex. 1993); 
Fox
, 121 S.W.3d at 857.  “Status quo is defined as ‘the last, actual, peaceable, noncontested status which preceded the pending controversy.’”  
Universal Health Servs., Inc. v. Thompson
, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting 
Transp. Co. v. Robertson Transps., Inc
., 152 Tex. 551, 261 S.W.2d 549, 553-54 (1953)).

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief.  
Walling
, 863 S.W.2d at 58; 
Fox
, 121 S.W.3d at 857; 
Thompson
, 24 S.W.3d at 576.  Whether to grant or deny a request for a temporary injunction is within the trial court’s discretion, and we will not reverse its decision absent an abuse of discretion.  
Butnaru
, 84 S.W.3d at 204; 
Walling
, 863 S.W.2d at 58; 
Fox
, 121 S.W.3d at 857.  Accordingly, when reviewing such a decision, we must view the evidence in the light most favorable to the trial court’s order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion.  
Fox
, 121 S.W.3d at 857; 
Thompson
, 24 S.W.3d at 576; 
CRC-Evans Pipeline Int’l, Inc. v. Myers
, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ).  A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court’s decision.  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
Fox
, 121 S.W.3d at 857; 
Myers
, 927 S.W.2d at 262.

Probable Right to Relief

In its first issue, AISD contends that appellees presented no evidence of a probable right to relief on any of their claims.  Appellees primarily sought (1) both a temporary and permanent injunction prohibiting AISD from treating their children as transfer students, charging them tuition to attend AISD schools, and denying them admission to AISD schools unless they paid tuition and (2) a declaratory judgment asking the trial court to declare that AISD cannot treat their children as transfer students, charge tuition, or otherwise deny their children “free public education and services in AISD.”  They claim that they are third party beneficiaries to a contract between AISD and the developer of Tour 18 that permits the children of Firestone Drive residents to attend AISD without tuition.
(footnote: 8)  They also claim that, as a result of this alleged contract and other actions by the AISD Board, AISD is estopped from denying that it has agreed to allow the children of Firestone Drive to attend AISD schools free of charge and that AISD would be unjustly enriched by charging them tuition for their children to attend AISD schools.  Appellees further contend that they are entitled to relief because AISD violated the Open Meetings Act, “other Texas statutes,”
(footnote: 9) and their right to procedural due process.

A party seeking a temporary injunction must have at least one valid legal theory to support a probable right to recover.  
Marketshare Telecom, L.L.C. v. Ericsson, Inc
., 198 S.W.3d 908, 922 (Tex. App.—Dallas 2006, no pet.); 
Brammer v. KB Home Lone Star, L.P
., 114 S.W.3d 101, 110 (Tex. App.—Austin 2003, no pet.).  Accordingly, we will review each of appellees’ theories to determine whether they demonstrated a probable right to recover on their claims for declaratory and injunctive relief.  
See Marketshare Telecom
, 198 S.W.3d at 922.

Contractual and Quasi-contractual Theories

Appellees contend that they are third party beneficiaries of a contract between AISD and Gary VanTrease, the developer of Tour 18, as evidenced by an October 20, 1997 letter from then-superintendent Mickey Koonce to Van Trease and as later ratified by the AISD Board.  AISD contends that no valid contract was formed between AISD and VanTrease, that Koonce did not have authority to bind AISD, and that even if a valid contract existed, appellees were not intended third party beneficiaries of that contract. 

The letter from Koonce to VanTrease reads as follows:

I have enclosed a copy of the minutes of the Argyle ISD Board of Trustees meeting in which you asked that the students living on the one street of The Estates at Tour 18 which is in the Denton ISD to be allowed to attend the Argyle ISD.  I have also enclosed a copy of the transfer policy.  

After reviewing the policy, the Board did not need to take action.  However, the Board was in agreement that 
with our current policy
, these student [sic] could be accepted into the district with no tuition charge.  [Emphasis added.]

The copy of the letter that AISD provided to appellees
(footnote: 10) did not have any minutes or transfer policy attached.  Superintendent Pierel testified that she could not find a copy of the letter in AISD’s records, but that she obtained a copy from DISD.

Appellees introduced minutes from a June 9, 1997 AISD Board meeting stating that “[d]uring Administration comments, Dr. Koonce informed the Board that it had been discovered that one street in the Tour 18 development was in the Denton ISD.”  They also introduced minutes from an August 18, 1997 meeting stating that 

Mr. Gary Van Trease, resident and builder in Tour 18 Development, made a presentation to the Board in reference to the one street of this housing addition which is in the Denton ISD and not the Argyle ISD.  The Board took no action at this time.  Dr. Koonce was asked to investigate any legal ramifications should these students be allowed to attend the Argyle ISD 
when the policy states that we do not accept transfers
.  [Emphasis added.]

Minutes from the September 15, 1997 meeting state that “[n]o action was taken on altering the transfer policy.”  And, finally, the second page
(footnote: 11) of minutes from an August 28, 1998 special meeting state, “Jim Wallace asked about the student who lives on the Denton ISD street of Tour 18.  The Board asked if our policy needed to be changed.”

The fact that a person might receive an incidental benefit from a contract to which he or she is not a party does not give that person a right of action to enforce the contract. 
 MCI Telecomms. Corp. v. Tex. Util. Elec. Co
., 995 S.W.2d 647, 650-51 (Tex. 1999)
.
  A third party may recover on a contract made between other parties only if the parties entered into the contract directly for the third party’s benefit.  
Id
.  To qualify as one for whose benefit the contract was made, the third party must show that she is either a donee or creditor beneficiary of, and not one who is benefitted only incidentally by the performance of, the contract.  
Id
.  In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling.  
Id
.  A court will not create a third-party-beneficiary contract by implication.  
Id
.  The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out, or enforcement by the third party must be denied.  
Id
.  Consequently, a presumption exists that parties contracted for themselves unless it clearly appears that they intended a third party to benefit from the contract.  
Id
.

Here, there is no indication that the Board authorized Koonce to enter into a contract with VanTrease.  A school district may act only by and through its board of trustees.  
Tex. Educ. Code Ann
. § 11.151 (Vernon 2006); 
Royse ISD v. Reinhardt
, 159 S.W. 1010, 1011 (Tex. Civ. App.—Dallas 1913, writ ref’d).  There is no evidence that the Board authorized the letter, or that it even knew of its contents.
(footnote: 12)  
See Thermo Prods. Co. v. Chilton ISD
, 647 S.W.2d 726, 732 (Tex. App.—Waco 1983, writ ref’d n.r.e.) (“[F]or the acts of the governmental body to be valid, it must act as a body.”).  The evidence shows only that the Board was informed in 1997 that part of Firestone Drive was located in DISD, that AISD’s policy at that time was not to accept transfer students, that the Board took no action to change the policy, and that the Board authorized Koonce only to investigate the legal ramifications of letting children on Firestone Drive attend AISD for free.  There is no indication that the Board ever authorized Koonce to send the 1997 letter.
(footnote: 13)
 Appellees contend that even if Koonce was not authorized to send such a letter, he had apparent authority to bind the school district.  Apparent authority arises through acts of participation, knowledge, or acquiescence 
by the principal
 that clothe the agent with the indicia of apparent authority.  
Ins. Co. of N. Am. v. Morris
, 981 S.W.2d 667, 672 (Tex. 1998); 
Tex. Cityview Care Ctr., L.P. v. Fryer
, No. 02-06-00373-CV, 2007 WL 1502088, at *5 (Tex. App.—Fort Worth May 24, 2007, no pet. h.).  Certain limitations apply in determining whether apparent authority exists.  
Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5; 
Lifshutz v. Lifshutz
, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pets. denied); 
Suarez v. Jordan
, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  

First, apparent authority is determined by looking to the acts of the principal and ascertaining whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal.  
Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5; 
Lifshutz
, 199 S.W.3d at 22; 
Suarez
, 35 S.W.3d at 272.  Only the conduct of the principal may be considered; representations made by the agent of her authority have no effect.  
Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5; 
Lifshutz
, 199 S.W.3d at 22-23; 
Suarez
, 35 S.W.3d at 272.  Second, the principal must either have affirmatively held the agent out as possessing the authority, or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner.  
Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5; 
Lifshutz
, 199 S.W.3d at 23; 
Suarez
, 35 S.W.3d at 272.  Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent’s authority, and if the party deals with the agent without having made such a determination, she does so at her own risk.  
Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5; 
Lifshutz
, 199 S.W.3d at 23; 
Suarez
, 35 S.W.3d at 272.

Appellees contend that the Board’s failure to revoke the 1997 letter shows that Koonce had apparent authority to bind AISD to accept Firestone Drive residents’ children into the district without registering as transfer students or paying tuition.  But there is no evidence that the Board was aware of Koonce’s letter.  Although Superintendent Pierel obtained a copy of the letter from DISD in 2006 after Jeffrey Wolf asked for it pursuant to an open records request, there is no evidence as to how DISD received a copy or from whom.  Thus, the Board’s failure to revoke the letter cannot work to confer apparent authority upon Koonce when there is no evidence that the Board knew of its existence in the first place or that it had authorized Koonce to do anything beyond investigate the legal ramifications of letting the children attend AISD in contravention of the then-current transfer policy.

Furthermore, even if the letter could be considered an authorized, enforceable contract, the language in the letter indicates only that the students “could be” admitted without payment of tuition based on AISD’s “current policy.”  Such language could not bind the district to allow these students to attend its schools tuition-free in perpetuity, nor could it restrict the district from changing its policy in the future.

Accordingly, we conclude and hold that appellees did not offer any evidence that AISD entered into a valid, authorized contract with VanTrease that was intended to be enforceable by the residents of Firestone Drive.  
See  
Tex. Educ. Code Ann
. § 11.151;
 Tex. Cityview Care Ctr
., 2007 WL 1502088, at *5-6 (holding arbitration agreement invalid because there was no evidence that daughter had authority to bind her mother to agreement).

Estoppel Defense

Appellees asserted in their pleadings that even if the evidence failed to show the existence of a valid, enforceable contract by which AISD would be bound to the residents of Firestone Drive, AISD was estopped from denying the existence of such an agreement based on “AISD’s longstanding treatment of [appellees’] children as students of AISD, AISD’s representations to the Firestone [Drive] residents, and AISD’s course of conduct.”  Appellees claim that AISD should be estopped from treating their children as transfer students or charging them tuition to attend AISD schools.  AISD answered that, as a governmental entity performing a governmental function, it is not subject to estoppel, and that even if estoppel could be applied to a school district, appellees failed to show a probable right to recover on their claims for declaratory and permanent injunctive relief based on an estoppel theory.

Applicable Law

Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense.  
Joe v. Two Thirty Nine Joint Venture
, 145 S.W.3d 150, 156 n.1 (Tex. 2004); 
Collins v. Allied Pharmacy Mgmt., Inc
., 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.] 1994, no writ) (“[E]stoppel is a shield, not a sword.”).  The elements of equitable estoppel are (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations.  
Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc
., 962 S.W.2d 507, 515-16 (Tex. 1998); 
Gulbenkian v. Penn
, 151 Tex. 412, 252 S.W.2d 929, 932 (1952).

The supreme court has held that a governmental entity is not subject to estoppel when it exercises its governmental powers.  
Leeco Gas & Oil Co. v. Nueces County
, 736 S.W.2d 629, 630 (Tex. 1987); 
City of Hutchins v. Prasifka
, 450 S.W.2d 829, 835 (Tex. 1970); 
see also City of White Settlement v. Super Wash, Inc
., 198 S.W.3d 770, 773 (Tex. 2006) (explaining origin of rule with reference to cities).  But the supreme court has “also found ‘authority for the proposition that a 
municipality
 may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions.’”
(footnote: 14)  
Super Wash
, 198 S.W.3d at 774 (emphasis added) (quoting 
Prasifka
, 450 S.W.2d at 836); 
see City of San Antonio v. TPLP Office Park Props
., 218 S.W.3d 60, 67 
(Tex. 2007) (acknowledging exception but holding that facts of case did not warrant application of exception to actions of municipality); 
Odessa Tex. Sheriff’s Posse, Inc. v. Ector County
, 215 S.W.3d 458, 469-70 (Tex. App.—Eastland 2006, pet. denied) (acknowledging general rule and discussing applicability of exception);
 Kelley v. Tex. State Bd. of Dental Exam’rs
, 530 S.W.2d 132, 135 (Tex. Civ. App.—Fort Worth 1975, writ ref’d n.r.e.) (citing 
Prasifka
 as authority for exception when State entity is performing governmental function).  This exception applies “only in exceptional cases [in which] the circumstances clearly demand its application to prevent manifest injustice.” 
 Super Wash
, 198 S.W.3d at 774 (quoting 
Prasifka
, 450 S.W.2d at 836).  The supreme court has applied the exception in only two cases in which city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party.  
Id
. at 775.  The court, not the jury, determines whether the exception applies.  
Id
. at 774.

Analysis

AISD contends generally that estoppel cannot be asserted against school districts; that even if it can be applied against school districts, there is no evidence of “manifest injustice” in this case that would warrant application of the exception to the general rule that a governmental entity is not subject to estoppel except in “exceptional cases in which the circumstances clearly demand its application to prevent manifest injustice”; and, finally, that even if the estoppel exception applies, appellees have not proven a probable right to recover on the merits of their claims based on the theory that AISD is estopped from denying an agreement to admit the Firestone Drive children into the district without charging tuition.  We need not decide AISD’s first two complaints as to whether estoppel can be used against it in the first place because we determine that appellees failed to show a 
probable
 right to recover on the merits of their claims based on their estoppel theory.
(footnote: 15)
 The trial court’s order granting the temporary injunction stated the following:

The court finds that [appellees] have established probable success on the merits because the evidence in this case demonstrates that

it is an exceptional case 
requiring the application of estoppel to prevent manifest injustice
 to [appellees] and their children.  In so concluding, this Court is not intending to interfere with AISD’s exercise of its government[al] powers, but instead is 
maintaining the status quo
 so that the parties’ rights can be determined. [Emphasis added.]

When announcing its decision to grant the injunction after the hearing, the trial court noted,

I believe that this falls into one of those limited circumstances in that for this school year they were previously enrolled in the spring [2006] thinking they were going to go to [AISD].  

The school district got the complaint back in September of 2005.  They didn’t at that point in time say, as an abundance of caution, you may be required to pay X amount of dollars in tuition.  And even when they made the resolution on June 19th, . . . even then the school district didn’t tell them you have to do X amount of dollars.  In fact, that didn’t come up until just before school started.  And so I think it would be unfair 
for this school year
 to not give them an opportunity to find other arrangements . . . .  [Emphasis added.] 

It is clear from the trial judge’s comments at the hearing that he believed it would be manifestly unjust for AISD (1) to accept the 2006-07 school year preregistration forms for appellees’ children in the spring of 2006 without informing them that they could be charged tuition to attend AISD for that school year, (2) to allow appellees to believe that their children were indeed preregistered for the 2006-07 school year without payment of tuition,
(footnote: 16) and (3) to then attempt to force appellees to prepay tuition for the entire school year in full just days before the 2006-07 school year began.

When appellees’ children started attending AISD schools, the district’s official, published policy was that

[n]o nonresident students shall be permitted to attend District schools, except as provided by this policy. . . .  Nonresident students may continue in attendance under this policy on a tuition basis . . . .  The Board shall determine annually and within statutory limits the amount of tuition, if any, to be charged . . . .  The Board may waive tuition for a student upon written application by the student or parent or guardian, upon the recommendation of the Superintendent . . . .  The District may initiate withdrawal of students whose tuition payments are delinquent.

Appellees contend that they presented the following evidence tending to support their estoppel theory:  the 1997 letter from Koonce to VanTrease, the language in the June 19, 2006 resolution stating that “this Resolution is conditioned upon Firestone Drive not being annexed into the [AISD],” and section 25.038 of the education code.

Appellees contend that they relied on the letter in enrolling their children in AISD and in believing that their children could attend AISD without having to register as transfer students or pay tuition.  But the evidence shows that appellees did not know of the existence of the letter until 2006—after they signed the petition to have their street released from DISD and included in AISD.  Thus, appellees could not have relied on the letter to support their children’s continued enrollment in AISD after they had already learned that their lots were located in DISD rather than AISD.

For estoppel to apply against a governmental entity, the person seeking to estop the entity must show, among other things, that he or she relied on an act authorized by the entity.  
City of San Angelo v. Deutsch
, 91 S.W.2d 308, 309 (Tex. 1936); 
Maguire Oil Co. v. City of Houston
, 69 S.W.3d 350, 366 (Tex. App.—Texarkana 2003, pet. denied).  But we have already determined that there is no evidence that the Board authorized, or even was aware of, the letter from Koonce to VanTrease.  Thus, the letter cannot support appellees’ estoppel defense.  
Cf. Bowman v. Lumberton ISD
, 801 S.W.2d 883, 888 (Tex. 1990) (op. on reh’g) (Estoppel my apply against a subdivision of government “where the governing body is a board . . . if the evidence clearly indicates that the subordinate officer’s act was done with the knowledge of the governing body and was so closely related to the expressed will of the governing body  [so] as to constitute [the officer’s act] that of the board . . . itself.”); 
La Villa ISD v. Gomez Garza Design, Inc
., 79 S.W.3d 217, 221-22 (Tex. App.—Corpus Christi 2002, pet. denied) (estopping school district from asserting that superintendent had no authority from board to enter into construction design contract when evidence showed that superintendent’s action was taken with the board’s “knowledge and implicit approval”).

Moreover, as we have previously stated, the letter does not say that the Firestone Drive residents’ children would be able to attend AISD schools—upon payment of tuition or otherwise—in perpetuity.
(footnote: 17)  It specifically refers to AISD’s current policy and that the children “could be,” not “definitely would be,” accepted into the district with no tuition charge; it does not indicate how long such students would be able to attend on a nontuition basis, nor does it promise that the Board would never change the 1997 transfer policy.  Thus, the trial court could not use the letter as a basis for estopping AISD from denying the existence of an agreement allowing the Firestone Drive residents’ children to attend AISD schools for free indefinitely.

Appellees next contend that they showed that AISD is estopped from charging them tuition because of the language in the resolution that 
it was “conditioned upon Firestone Drive not being annexed into” AISD.  

The recitals in the resolution begin with the acknowledgment that the Firestone Drive residents signed the petition, and that as a result, AISD approved the petition to annex Firestone Drive, but that DISD voted to reject it.  It then acknowledges that AISD “has permitted the residents of Firestone Drive to attend the District without the payment of tuition” and notes the residents’ community ties with AISD and their belief when they bought their homes that their children could attend AISD.  The resolution then contains the following recitals:

WHEREAS, the [AISD] is not accepting new transfer students;

WHEREAS, the [AISD] has been requesting other transfer students to pay tuition;

WHEREAS, the [AISD’s] lack of available funds necessitates the District requiring all nonresident students to pay tuition.

It also includes the following resolutions, in pertinent part:

RESOLVED, That current residents of Firestone Drive may be permitted to attend [AISD] upon the payment of tuition and in accordance with District Policy governing student transfers;

RESOLVED, That residents that move to Firestone Drive after the adoption of this Resolution shall not be granted a transfer into [AISD];

RESOLVED, That this Resolution is conditioned upon Firestone Drive not being annexed into the [AISD];

RESOLVED, That the [AISD] reserve[s] the right to rescind this Resolution at any time with or without cause;

Appellees contend that because their appeal of DISD’s decision had been filed when the Board passed the resolution, they relied on the conditional language to mean that the Board did not intend to charge tuition until that appeal was resolved.  The trial court stated that it thought the resolution “was inartfully drafted when it does talk about the condition of the annexation, which I think could be interpreted to - - somebody could rely on that that [sic] meant we’re going to wait and see what the final decision is going to be.”  Accepting as true appellees’ evidence that they relied on this language to mean that AISD would not charge them tuition until after the conclusion of the DISD appeal, we nevertheless observe that there is no evidence that AISD intended for appellees to act in reliance upon this language, i.e., by failing to prepare for the possibility of paying tuition or by failing to make arrangements to enroll in DISD or a private school.  Although an inference can be made that AISD deliberately waited until less than a month before the beginning of the 2006-07 school year to inform appellees of the tuition amount in an effort to force them to enroll in DISD instead of AISD if they could not afford to pay the tuition, there is no evidence in the record of such an intent.
(footnote: 18)  One of the resolutions clearly states that attendance by current Firestone Drive residents is conditioned upon payment of tuition.  Superintendent Pierel also testified that AISD’s Board does not get any concrete budget numbers for the next school year until “usually the first part of the summer.”  She also testified that the resolution was drafted by AISD’s attorney.  Even construing the evidence in the light most favorable to the trial court’s ruling, appellees have not shown a probable right to recover as a result of the language in the resolution.

Finally, appellees contend that AISD is estopped from charging them tuition by virtue of section 25.038 of the education code, which provides that “unless a tuition fee is prescribed and set out in a transfer agreement before its execution by the parties, an increase in tuition charge may not be made for the year of that transfer that exceeds the tuition charge, if any, of the preceding school year.”  
Tex. Educ. Code Ann
. § 25.038 (Vernon 2006).  Here, the July 26, 2006 letter that Superintendent Pierel sent appellees listed the tuition as $6,487.50, but the “2006-07 Application for Transfer on Tuition Basis” that she included with the letter did not show a tuition amount.  Appellees contend that because no tuition amount was included in the application, it does not meet the requirements of section 25.038.

To the extent that the application could be considered a “transfer agreement” under section 25.038,
(footnote: 19) there is no evidence that AISD made any false representations or concealed any material fact with the intent that appellees rely on the representation or concealment.  Superintendent Pierel’s accompanying letter plainly states the tuition amount and the payment requirements, as does her email to Jeffrey Wolf.  As a result, appellees have not shown a probable right to recover on their claims under an estoppel theory based on section 25.038.

Accordingly, for the reasons set forth above, considering the record in the light most favorable to the trial court’s ruling, we conclude that appellees did not bring forward evidence tending to show a probable right to recover on the merits of their claims supported by their estoppel theory.
(footnote: 20)  Moreover, even if this evidence could be construed as tending to show a probable right to recover on the merits of their claims based on proof of their estoppel theory, we do not believe that these facts rise to the level of “manifest injustice” that would be required were we to determine that the exception to the general rule that school districts are generally not subject to estoppel is applicable.
(footnote: 21)  Although it would have been more convenient to appellees if AISD had given them more notice of the tuition requirement for the 2006-07 school year and allowed them to pay it in monthly installments, there is no evidence that AISD “acted deliberately to induce [appellees] to act in a way that benefitted [AISD] but prejudiced” appellees.  
Super Wash
, 198 S.W.3d at 775.  In addition, appellees have failed to show that AISD’s actions have resulted in a 
permanent
 loss of their claims against AISD; for example, appellees have not sought a waiver of tuition payments in accordance with AISD’s current transfer policy,
(footnote: 22) nor have they appealed AISD’s decision to the Texas Commissioner of Education.  Accordingly, we conclude and hold that the trial court’s injunction cannot be upheld based on appellees’ estoppel theories.
(footnote: 23)
 Unjust Enrichment

Appellees also pled that because 

AISD has the ability to immediately detach land to approve the land trade which AISD’s superintendent previously indicated would be acceptable to AISD,
(footnote: 24) AISD will be unjustly enriched by charging tuition to Firestone [Drive] residents . . . .  AISD will receive per diem payments from the [S]tate of Texas for [appellees’] children.  This is the same amount AISD will receive when annexation of the Firestone properties is complete.  To charge [appellees] tuition in addition to receiving money from the State will unjustly enrich AISD. 

Unjust enrichment, itself, is not an independent cause of action but rather “characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.”  
Friberg-Cooper Water Supply Corp. v. Elledge
, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006, pet. filed) (quoting 
Walker v. Cotter Props., Inc
., 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)); 
Mowbray v. Avery
, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied); 
see Best Buy Co. v. Barrera
, 214 S.W.3d 66, 73 (Tex. App.—Corpus Christi 2006, pet. filed).  The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him to retain ought to make restitution.  
Friberg-Cooper
, 197 S.W.3d at 832; 
Mowbray
, 76 S.W.3d at 679.  Unjust enrichment is not a proper remedy “merely because it ‘might appear expedient or generally fair that some recompense be afforded for an unfortunate loss’ to the claimant, or because the benefits to the person sought to be charged amount to a windfall.”  
Heldenfels Bros. Inc. v. City of Corpus Christi
, 832 S.W.2d 39, 42 (Tex. 1992) (quoting 
Austin v. Duval
, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied)); 
Mowbray
, 76 S.W.3d at 679.  To recover under an unjust enrichment theory, the benefits to the other party must be actually unjust under the principles of equity.  
Mowbray
, 76 S.W.3d at 679; 
Burlington N. R.R. v. Sw. Elec. Power Co
., 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), 
aff’d
, 966 S.W.2d 467 (Tex. 1998).

AISD’s accountant, Paul Lyles, testified that the district does not receive state funds for students if it receives tuition for their attendance.  Appellees presented no evidence to the contrary; accordingly, we hold that appellees did not produce evidence tending to show a probable right to recover on an unjust enrichment theory.

Alleged Violation of Open Meetings Act

Appellees also contended that AISD violated the Open Meetings Act by failing to provide proper notice of the June 19, 2006 meeting agenda, misrepresenting the agenda on its website and falsely certifying that the correct agenda had been timely posted on the website in accordance with the Open Meetings Act, and by voting without discussion or deliberation in open session.  Appellees allege that the acts taken by the Board before and during that meeting are therefore voidable under section 551.141 of the government code, that they are entitled to declaratory relief that the acts of the Board taken on June 19, 2006 are void, and that they are entitled to injunctive relief to enjoin these void actions.  They also contend that as a result of the Open Meetings Act violation, the Board’s actions at that meeting failed to change the status of appellees’ children from “in-district” students to transfer students and, further, that it would be unlawful to charge tuition for “in-district” students. 

The Open Meetings Act requires every regular, special, or called meeting of a governmental body, including school boards of trustees, to be open to the public unless otherwise required by the Act.  
Tex. Gov’t Code Ann
. §§ 551.001(3)(e), .002 (Vernon 2004); 
City of San Benito v. Rio Grande Valley Gas Co
., 109 S.W.3d 750, 757 (Tex. 2003).  “Governmental actions in violation of the Open Meetings Act are voidable.”  
Tex. Gov’t Code Ann
. § 551.141; 
Olympic Waste Servs. v. City of Grand Saline
, 204 S.W.3d 496, 504 (Tex. App.—Tyler 2006, no pet.).

Generally, under the Open Meetings Act, seventy-two hours’ written notice shall be given of the date, hour, place, and the subject matter of each meeting held by the governmental body.  
Tex. Gov’t Code Ann
. § 551.041 (Vernon 2004), § 551.043 (Vernon Supp. 2004); 
City of Port Isabel v. Pinnell
, 207 S.W.3d 394, 406 (Tex. App.—Corpus Christi 2006, no pet.); 
Hill v. Palestine ISD
, 113 S.W.3d 14, 16 n.3 (Tex. App.—Tyler 2004, pet. denied).  A school district must post notice of each meeting “on a bulletin board at a place convenient to the public in the central administrative office of the district.”  
Tex. Gov’t Code Ann
. § 551.051.  In addition, a school district that maintains an Internet website must concurrently post notice of each meeting on its website; a school district “that contains all or part of the area within the corporate boundaries of a municipality with a population of 48,000 or more” must also concurrently post the agenda for each meeting on its website.  
Id
. § 551.056(a)–(c) (Vernon Supp. 2006).  However, “[t]he validity of a posted notice of a meeting or an agenda by a governmental body . . . subject to [551.056] that made a good faith attempt to comply with [its] requirements . . . is not affected by a failure to comply with a requirement of [551.056] that is due to a technical problem beyond the control of the governmental body.”  
Id
. § 551.056(d).

The intent of the Act is to safeguard the public’s interest in knowing the workings of its governmental bodies.  
Cox Enters., Inc. v. Bd. of Trs. of Austin ISD
, 706 S.W.2d 956, 960 (Tex. 1986); 
Stockdale v. Meno
, 867 S.W.2d 123, 124-25 (Tex. App.—Austin 2003, writ denied).  The intended beneficiaries of the Act are not individual citizens, but members of the interested public.  
City of San Antonio v. Fourth Court of Appeals
, 820 S.W.2d 762, 765 (Tex. 1991) (orig. proceeding); 
Stockdale
, 867 S.W.2d at 125.  The supreme court explained in 
City of San Antonio
 that

[t]he Open Meetings Act is not a legislative scheme for service of process; it has no due process implications.  Rather, its purpose is to provide “openness at every stage of [a governmental body’s] deliberations.” . . . . [W]e need not . . . inquire into whether a notice was tailored to reach those specific individuals whose private interests are most likely to be affected.

City of San Antonio
, 820 S.W.2d at 765 (citations omitted); 
Stockdale
, 867 S.W.2d at 125.  Accordingly, appellees are not entitled to any notice other than that given to the public at large.  
See Stockdale
, 867 S.W.2d at 125.

The evidence at the hearing was undisputed that AISD posted the following agenda item on the bulletin board at the administration building at 5:00 p.m. on June 16, 2006, at least seventy-two hours before the 6:00 p.m. June 19, 2006 meeting:  “Consider approving resolution allowing the current residents of Firestone Drive to attend [AISD] upon payment of out of District tuition.”  The parties stipulated that AISD’s webmaster received the correct agenda to post seventy-two hours before the June 19, 2006 meeting, but he created a bad link, so the May 19 meeting agenda appeared instead of the June 19 agenda.  They also stipulated that this problem was beyond the school district’s control.  The link was corrected a few hours before the meeting began.  The May 19 meeting agenda did not have any item referring to the charging of tuition for Firestone Drive residents.  The superintendent never informed appellees or any of the other Firestone Drive residents personally about the tuition issue being on the agenda.  Jeffrey Wolf testified that his neighbors called the administration office on June 16 and were told that the Firestone Drive residents were not on the agenda for the June 19 meeting.  However, because he and Janice attended the meeting, it is undisputed that they had at least some notice of the meeting.

The evidence at the hearing showed that AISD complied with the notice requirements of section 551.051 and attempted to comply with the requirements of section 551.056 regarding posting notice on the website.  There is no evidence of any bad faith by AISD in its webmaster’s inadvertent posting of a bad link to the wrong agenda for the June 19 meeting.  Accordingly, appellees failed to present evidence tending to show a probable right to recover on their Open Meetings Act claim based on a lack of notice.  
See
 
Tex. Gov’t Code Ann
. §§ 551.051, .056(d).

Appellees also contended that the Board improperly voted on the resolution without deliberation in an open meeting.  There is no evidence indicating that the Board deliberated on the matter in a closed meeting, and the Open Meetings Act does not 
require
 the Board to deliberate before voting.  
See United ISD v. Gonzalez
, 911 S.W.2d 118, 127 (Tex. App.—San Antonio 1995), 
writ denied
, 940 S.W.2d 593 (Tex. 1996); 
cf
. 
Tex. Gov’t Code Ann
. § 551.082 (Vernon 2004) (allowing school district to deliberate on student disciplinary matter or complaint by employee against another employee in closed session unless parent or guardian of student or employee against whom charges are brought requests otherwise in writing).  Accordingly, we conclude and hold that appellees did not present any evidence tending to show a probable right to recover on their claims based on AISD’s alleged violation of the Open Meetings Act.

Violation of Procedural Due Process Rights

In support of their procedural due process complaints, appellees alleged that “on the Thursday prior to the Monday, June 19 meeting when notice of any school board meeting was required to be posted, the AISD administrative office told Firestone [Drive] residents via telephone that they were not on the agenda for the June 19 meeting. . . .  None of the Firestone [Drive] residents had an inkling of the possible board action until the afternoon of June 19.”  The allegations also include that AISD’s counsel had agreed to provide appellees’ counsel with notice of any such agenda item but failed to do so, and that the wrong agenda was posted to the district’s website.  They asked for a declaratory judgment that “the action of the board on June 19 approving tuition is void because of due process infirmities.”  Appellees also alleged that their residence on Firestone Drive and the 1997 letter create a property right that is protected by the Texas Constitution and that the notice of the June 19, 2006 meeting “was insufficient to withstand due process scrutiny under the Texas Constitution.”

Procedural due process requires that a governmental entity’s deprivation of life, liberty, or property, even if consistent with substantive due process, must “be implemented in a fair manner.”  
United States v. Salerno
, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101 (1987); 
City of Arlington v. Centerfolds
, 
Inc
., No. 02-06-00080-CV, 2007 WL 1725821, at *7 (Tex. App.—Fort Worth June 14, 2007, no pet. h.).  The first inquiry in any due process claim under the United States Constitution is whether the plaintiff has been deprived of a protected property or liberty interest.  
Am. Mfrs. Mut. Ins. Co. v. Sullivan
, 526 U.S. 40, 59, 119 S. Ct. 977, 989 (1999); 
Centerfolds
, 2007 WL 1725821, at *7.

Appellees claim that they have a property interest in their children’s attending AISD without payment of tuition.  Appellees admittedly do not live in the district.  Section 25.001(b) of the education code provides that “[t]he board of trustees of a school district . . . shall admit into the public schools of the district free of tuition a person who is over five and younger than 21 years of age on the first day of September of the school year in which admission is sought if:  . . . the person and either parent of the person reside in the school district.”  
Tex. Educ. Code Ann
. § 25.001(b)(1).  Section 25.001(b) also provides that a school district shall admit certain other students who do not live in the district free of tuition, but none of those other situations applies here.  
Id
. § 25.001(b)(2)–(9).  Accordingly, appellees do not have a statutory right to attend AISD schools free of charge.

Neither do they have any property right as a result of the 1997 letter from Koonce to VanTrease.  We have already concluded that even if the letter could be construed as an authorized, enforceable contract, it did not bind the district indefinitely.  Moreover, estoppel cannot create a right that does not otherwise exist.  
Odessa Tex. Sheriff’s Posse
, 215 S.W.3d at 470; 
Dallas Cent. Appraisal Dist. v. GTE Directories Corp
., 905 S.W.2d 318, 322 (Tex. App.—Dallas 1995, writ denied); 
see Sun Oil Co. (Del.) v. Madeley
, 626 S.W.2d 726, 734 (Tex. 1981).

Finally, we have already determined that there is no evidence that AISD failed to comply with the notice requirements of the Open Meetings Act.  Appellees have cited no authority supporting their contention that they were entitled to any additional notice other than what was statutorily required.

Accordingly, we conclude and hold that appellees did not offer evidence tending to show a probable right to recover on their claims because of a procedural due process violation by AISD.

After reviewing the record in the light most favorable to the trial court’s order and indulging every reasonable inference in its favor, we conclude that appellees failed to show a probable right to recover on the merits of any of their  claims based on any of their alleged theories.  Accordingly, under the prescribed standard of review, we must conclude that the trial court abused its discretion in entering the temporary injunction.  We sustain AISD’s first issue.  Because we grant relief on AISD’s first issue, we need not address its second and third issues.
(footnote: 25)  
See
 
Tex. R. App. P
. 47.1; 
Teague v. City of Jacksboro
, 190 S.W.3d 813, 821 n.7 (Tex. App.—Fort Worth 2006, pet. denied).

Appellee’s Cross-Issue

In one cross-issue, appellees contend that the trial court abused its discretion by failing to issue a temporary injunction enjoining AISD from interfering with appellees’ pursuit of their appeal from DISD’s denial of their detachment petition that is currently pending before the Texas Commissioner of Education.  Because we have concluded that appellees did not introduce evidence tending to show a probable right to recover on any of their claims and, therefore, that they were not entitled to a temporary injunction, we overrule this issue.

Conclusion

Having sustained AISD’s first issue and overruled appellees’ cross-issue, we reverse and vacate the trial court’s order granting a temporary injunction and remand the case to the trial court for further proceedings on the merits.

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: August 9, 2007

FOOTNOTES
1:
At oral argument, the parties informed this court that a hearing officer had issued a decision but that it was not yet final.  The parties have not notified this court of any change in the status of that decision; thus we presume it is still pending and not yet final.  Moreover, there is no such decision available yet on the Texas Commissioner of Education’s website.  
See
 http://www.tea.state.tx.us /commissioner (last visited August 8, 2007).

2:
Either the principal’s or superintendent’s office told her that all children living in Tour 18 were residents of the district.

3:
On the 2005-06 school year enrollment forms, both the Zimmermans and the Wolfs listed their correct addresses on Firestone Drive and answered the question, “School District you reside in,” with “Argyle.”  Janice testified that she did not know that her home was located in DISD rather than AISD until spring 2005 when she tried to vote in an AISD board election and was told she could not vote because she did not live in AISD.  Vicki testified that she found out they paid taxes to DISD rather than AISD in 2004 after she first enrolled her children in AISD. 

4:
Janice testified that only “eight or ten” houses out of 125 on Firestone Drive were affected; however, for purposes of discussion, we will refer to the part of the street located in DISD as Firestone Drive, without differentiating between the part of the street that is located in DISD and the part that is located in AISD.

5:
Pierce testified that Superintendent Pierel “asked if I [Pierce] could possibly draw up a petition requesting that we be annexed into the Argyle schools.”  However, Pierel testified that she did not ask Pierce to prepare the petition; instead, in response to Pierce’s assertion that the residents of Firestone Drive had wanted to be in AISD “for many years,” Pierel “told [Pierce] what the process was and that the district could not do this petition, that it would take the citizens to do the petition.” 

6:
The resolution also provided that “residents that move to Firestone Drive after the adoption of this [r]esolution shall not be granted a transfer into” AISD.  The resolution further stated that it was “conditioned upon Firestone Drive not being annexed into” AISD.

7:
This accelerated appeal was argued to this court and submitted on January 30, 2007.  We determined after oral argument that the parties’ dispute was appropriate for referral to mediation.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 154.021 (Vernon 2005).  Accordingly, we ordered the parties to mediate the dispute within forty-five days to give them an opportunity to settle.  On the parties’ agreed motion, we extended the time to mediate until April 21, 2007. On April 23, 2007, the mediator informed this court that the parties were unable to settle. 

8:
This argument is based on a 1997 letter written by then -superintendent Mickey Koonce to Gary VanTrease, the developer of the subdivision.  We will discuss the letter in more detail below.

9:
Appellees did not identify these “other statutes” in their petitions.

10:
Jeffrey obtained a copy of the letter from AISD in 2006 pursuant to an open records request.

11:
The first page is not included in the record.

12:
Miriam Pierce testified that when she spoke with Superintendent Pierel about the complaint and about circulating a petition to the Firestone Drive residents, she told Pierel that she “believe[d] everyone on the board had been aware of that [that the children of Firestone Drive residents were allowed to go to AISD without paying taxes to the district].”  According to Pierce, Pierel responded, “[Y]es, and we don’t fault anyone on your street.”  However, even viewing this evidence in the light most favorable to the trial court’s ruling, it is not evidence that Koonce’s actions in writing the letter were authorized by the Board at that time or that the current Board had ratified the letter.  
See Willis v. Donnelly
, 199 S.W.3d 262, 270 (Tex. 2006) (holding that ratification could be based only on theory that party expressly agreed to be bound by agreement or retain the benefits of agreement); 
Miller v. Kennedy & Minshew, P.C.
, 142 S.W.3d 325, 342-43 (Tex. App.—Fort Worth 2003, pet. denied) (“A person ratifies an unauthorized act if, by word or conduct, with knowledge of all material facts, he confirms or recognizes the act as valid.  Ratification may be inferred by a party’s course of conduct and need not be shown by express word or deed.”) (citation omitted).  Even if this evidence of the Board’s knowledge could be construed as a ratification, however, it does not change the nature of the language of the letter, which does not purport to bind AISD in perpetuity.  
See infra
 page 16-17.

13:
AISD’s counsel informed this court at oral argument that Koonce is deceased.

14:
The supreme court mentioned the estoppel exception in 
Bowman v. Lumberton ISD
, but decided the issues in that case under other “well recognized” exceptions to the general rule.  801 S.W.2d 883, 888 (Tex. 1990) (op. on reh’g).  Also, that case was a summary judgment case, in which the issue was whether the district established its defense as a matter of law.  
Id
. at 884-85.

15:
It appears from the record that the trial court may not have reached a review of the merits of appellees’ underlying claims after determining that the exception to the general rule that governmental entities are not subject to estoppel is applicable here.  After stating his determination that the exception to the general estoppel rule applied to AISD, the judge stated that “
I’m not reaching the final merits of the case
, but if [AISD] wins, then no longer will they [appellees] have the argument saying, well, can we just stay one more year so we can figure out where to go.  Basically, they’re on notice that you might need to start looking at other options.”  [Emphasis added.]  However, to be entitled to a temporary injunction, a party must not only allege a cause of action (here, declaratory judgment and injunctive relief based on the theory that AISD was estopped from asserting that a valid, enforceable agreement did not exist), but also offer evidence tending to sustain that cause of action.  
Fox
, 121 S.W.3d at 857; 
Miller Paper Co.
, 901 S.W.2d at 597; 
see also Dillard v. Austin ISD
, 806 S.W.2d 589, 595 (Tex. App.—Austin 1991, writ denied) (op. on reh’g) (holding that a determination that the exception applies does not address the merits of an underlying claim, only whether an estoppel defense may be asserted against a governmental entity).

16:
Although Jeffrey Wolf attended the June 19 meeting and knew the outcome of the Board’s vote on the resolution, he testified at the temporary injunction hearing that he did not think that tuition would be charged until his appeal from DISD’s denial of the detachment petition was resolved.  He based his opinion on the conditional language in the resolution.

17:
Appellees contend that the letter allows all children of Firestone Drive residents to attend AISD indefinitely as nontransfer students without paying tuition. 

18:
Although Superintendent Pierel’s July 26, 2006 letter told appellees that all tuition must be paid in full before the beginning of the school year, she sent an email to Jeffrey Wolf stating that the tuition could “be broken down into two equal payments at the beginning of each semester.” 

19:
AISD contends that any issue regarding the improper charging of tuition would be more properly brought before the Texas Commissioner of Education under section 7.057 of the education code, which provides that

a person may appeal in writing to the commissioner if the person is aggrieved by:

(1) the school laws of this state;  or

(2) actions or decisions of any school district board of trustees that violate:

(A) the school laws of this state;  or

(B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Tex. Educ. Code Ann
. § 7.057 (Vernon 2006).

20:
The trial court stated on the record that “there’s some definite fact questions about what representations were made and when.” 

21:
Because we decide that the exception would not be applicable in this case if we were to apply it, we need not decide whether the exception is limited solely to municipalities.

22:
This policy states that “[t]he Board may waive tuition for a student upon written application by the student or parent or guardian, upon the recommendation of the Superintendent.” 

23:
By no means do we intend to diminish the trial court’s justifiable concerns regarding every child’s education and its relative proximity to a child’s residence, especially in the unique situation presented here where children on the same street end up in different school districts.

24:
Jeffrey Wolf testified that Superintendent Pierel had told him that AISD would be willing to trade land with DISD so that DISD would be more willing to detach Firestone Drive.

25:
These issues relate to whether appellees proved a probable, imminent, and irreparable injury pending the outcome of the suit and whether they are precluded from obtaining the equitable relief of an injunction because, by misrepresenting their status as residents of AISD, they have unclean hands.