

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00157-CV

———————————————

RODNEY LARSON, Appellant

V.

WILLIAM CAIN, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-308849-19

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Appellant Rodney Larson appeals from an unfavorable jury verdict finding that he breached a fiduciary duty owed to Appellee William Cain and finding—on a different legal theory—that he owed Cain $186,100 in damages. The trial court rendered judgment in accordance with the jury's verdict and further awarded Cain his attorney's fees and prejudgment interest. Larson argues in three issues that (1) the evidence is legally and factually insufficient to prove that he owed Cain a fiduciary duty, (2) the evidence is insufficient to support the jury's damages award, and (3) the prejudgment-interest award tied to those damages is thus invalid. We will affirm.

## I. Background

Larson owned Hawkeye Truckload Management, which had a contract with GreatWide Truckload Management, a trucking dispatcher and freight broker. That contract provided a platform to match truck drivers with freight. When Larson decided to sell Hawkeye, he enlisted business broker Paul Von Vogt to assist. Cain reached out to Von Vogt about purchasing Hawkeye, but Richard Tennison and his wife, Yan Huang, had already bought it.[1] But a few months later, Von Vogt contacted Cain with news that Hawkeye was again on the market, and all the parties involved moved forward with negotiating a sale to Cain.

---

[1]Tennison and Huang paid Larson $290,000 in cash and gave him a $125,000 note secured by a lien on the business.

Cain met with Von Vogt and Larson to discuss the purchase. Before Cain, Larson, Tennison, and Huang signed a contract for Cain to buy Hawkeye—with Larson signing as a secured party—Cain wired funds totaling $219,600 to an "escrow account" as earnest money for the purchase.[2]

The sales contract was contingent on the Hawkeye–GreatWide contract's being assigned to Cain, something that ultimately did not happen. Despite that fact, Larson had distributed Cain's earnest money, paying Tennison and Huang $81,600, Von Vogt $23,500, and Larson himself the remaining $114,500. Although Cain demanded his $219,600 earnest money back when the assignment and closing did not occur, Larson declined, testifying at trial that he thought it was fair and equitable that he kept it.

Cain sued Larson, Tennison, Huang, and Von Vogt for breach of contract, fraud, unjust enrichment, theft, and for a declaratory judgment. Cain also pleaded a separate breach-of-fiduciary-duty claim against Larson based on the allegation that Larson had acted as an escrow agent in the transaction. After being awarded summary judgment

---

[2]Larson, to whom Cain wired the funds, testified that the money was deposited into his existing personal account, not an escrow account, despite previously testifying at a deposition that he had opened an account to hold the funds. At trial, he stated that he did not know what escrow meant.

against Tennison and Huang and settling with Von Vogt, Cain went to trial on his claims against Larson.[3]

## II. Evidentiary Sufficiency

In his first issue, Larson argues that the evidence is insufficient to prove that he owed Cain an informal fiduciary duty. In his second issue, Larson argues that the evidence does not support the jury's damages award of $186,100. Larson's third issue attacks the trial court's prejudgment-interest award. We will address these issues out of order.

### A. Standard of Review

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge— only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649,

---

[3]During Cain's case in chief, the trial court dismissed his breach-of-contract claim but stated that "the unjust[-]enrichment claim [was] proper" and "definitely should move forward."

651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When deciding whether the evidence is factually insufficient to support a finding, we set the finding aside only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). A claim of excessive damages is a factual-sufficiency complaint. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998).

## B. Damages Award

Larson's second issue posits that the evidence does not support the jury's $186,100 damages award.

Question 1 of the jury charge asked:

Did Defendant Rodney Larson hold money that in equity and good conscience belong[ed] to Plaintiff William Cain?

The jury answered "yes," a finding that Larson does not challenge.[4]

---

[4]We thus need not analyze the evidence supporting Cain's equitable claim. Even though we have held that unjust enrichment—which is what Cain pleaded—is not an independent cause of action, *see Argyle ISD ex rel. Bd. of Trs. v. Wolf*, 234 S.W.3d 229,

Question 2 was conditioned on a "yes" answer to Question 1 and asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate William Cain for his damages, if any, that resulted from such actions by Rodney Larson?

The jury answered "$186,100."

The evidence supports this finding. Larson admitted at trial that from the $219,600 that Cain indisputably transferred into his account, Larson paid $114,500 to himself, $81,600 to Tennison and Huang, and $23,500 to Von Vogt. Larson admitted that when the Hawkeye sale fell through, he did not return the money that Cain placed under his control, and Cain testified that Tennison and Huang did not return the money that Larson paid to them. Larson presented no evidence to contradict Cain's testimony. Von Vogt did return the $23,500 that Larson had paid him from Cain's earnest money, leaving $196,100 still unreturned. That Larson took only $114,500 for himself does not limit what Cain could recover by way of an equitable theory that Larson held earnest money that in equity and good conscience belonged to Cain—a claim the jury agreed

247 (Tex. App.—Fort Worth 2007, no pet.), we have also noted that "[s]uch an equitable claim, falling under the umbrella of quantum meruit, money had and received, or the like, provides an independent legal basis for recovery." *Skeels v. Suder*, 665 S.W.3d 637, 663 (Tex. App.—Fort Worth 2021), *rev'd on other grounds*, 671 S.W.3d 664 (Tex. 2023). In any event, Larson did not specially except to Cain's pleading, nor did he object to the submission of Question 1, which, as worded, technically reflected a money-had-and-received claim. *See, e.g.*, *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 800 (Tex. App.—Dallas 2011, no pet.) (discussing money-had-and-received question that asked whether defendant "[held] money, that in equity and good conscience, belong[ed] to" the plaintiff).

with. Credible, uncontradicted evidence thus supports the jury's award of $186,100 in damages,[5] so we overrule Larson's second issue.

## C. Breach of Fiduciary Duty

In his first issue, Larson argues that the evidence is insufficient to prove that he owed Cain an informal fiduciary duty. The jury found that he did and that he breached that duty. But faced with a damages question for fiduciary breach, the jury answered "$0." Because the evidence supports the jury's award of $186,100 in damages under an altogether different theory, we need not address Larson's first issue on the alternative theory of recovery for fiduciary breach—this issue is not necessary to the final disposition of this appeal.[6] *See* Tex. R. App. P. 47.1; *see also Grindinger v. Kixmiller*, No. 2-06-221-CV, 2007 WL 529954, at \*5 (Tex. App.—Fort Worth February 22, 2007, pet. denied) (mem. op.) (observing that alternative theory of recovery need not be addressed when evidence sufficed to support recovery under a different theory).

---

[5]The Hawkeye sales contract provided that "[o]nce Escrow is opened by the attorney, in the event that the Purchaser [Cain] refuses to complete the transaction, the earnest money[,] down payment, excluding $10,000.00, will be returned to the Purchaser. The $10,000.00 balance will be forfeited to the Sellers." We assume that this provision explains why the jury deducted $10,000 from the $196,100 that Cain was still out.

[6]As Cain points out, "even if the Court were to conclude that the record does not support the jury's finding on [breach of fiduciary duty], the ultimate judgment from the trial court would remain unchanged."

## III. Prejudgment Interest

Under this issue, Larson's brief says only that because the evidence does not support the damages award, "[a]ny [p]re-judgment interest would be invalid as well." Because we have held that sufficient evidence supports the jury's damages award, we overrule Larson's third issue.

## IV. Conclusion

Having overruled Larson's second and third issues and not needing to address his first issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: November 9, 2023