

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00122-CV

**PREFERRED FUEL DISTRIBUTORS, LP,**

Appellant

 v.

**AMIDHARA, LLC, ET AL.,**

Appellee

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2006-1396-1**

## MEMORANDUM OPINION

Preferred Fuel Distributors, L.P. (Preferred) appeals the trial court's summary judgments in favor of Amidhara, L.L.C. (Amidhara), Bhaveshkumar P. Savalia a/k/a Bhavesh Savalia (Savalia), Kamlesh Limbabhai Gajera a/k/a Kamlesh Gajera (Gajera), Krishna Krupa, Inc. (Krishna Krupa), Texas Oil Products, Inc. (TOP), Classic Star Group, LP f/k/a Classic Star Group, Inc. (Classic), Chowdhury M. Hossain a/k/a Tippoo Hossain or Sam S. Hossain (Hossain), Panamerican Fuel Distributors, LLC (Panamerican LLC), Panamerican Fuel Distributors, Inc. (Panamerican Inc.), and USA

Developers, LLC (USA Developers).  We will affirm in part and reverse and remand in part.

## BACKGROUND

USA Developers sold a Diamond Shamrock gas station to Krishna Krupa.  The Purchase and Sale Agreement signed by the parties states in pertinent part:

> **"Gasoline Supply Agreement"** means, as a part of this Agreement.  Buyer shall execute a separate agreement with the Seller for supply of petroleum fuel products to the subject location. Seller shall furnish the "Gasoline Supply Agreement" within 5 days of the execution of this agreement for Buyer to review.  Buyer must accept or reject the GSA prior to expiration of the Inspection Period. This Purchase and Sale Agreement of the property is contingent upon acceptance of the Gasoline Supply Agreement by the Buyer and shall be enforceable if the sale closes.

Thereafter, Krishna Krupa entered into a Gasoline Supply Agreement (GSA) with USA Fuel Distributors, LLC (USA Fuel).  USA Fuel's interests in the GSA were later acquired by Panamerican LLC and then assigned to Preferred.  Preferred subsequently filed suit against Amidhara, Savalia, Gajera, Krishna Krupa, TOP, Classic, Hossain, Panamerican LLC, Panamerican Inc., and USA Developers.

### The Allegations

Preferred made the following allegations in its live petition:  When USA Fuel and Panamerican[1] had each possessed the rights and obligations under the GSA, Krishna Krupa had been obligated to exclusively purchase gasoline from them.  Hossain, Panamerican's principal and the person who assigned Panamerican's rights under the GSA to Preferred, had represented to Preferred that Panamerican was Krishna Krupa's

---

[1] Preferred does not distinguish between Panamerican LLC and Panamerican Inc. in making these allegations in its petition.

exclusive gasoline supplier. Krishna Krupa and its principals, Gajera and Savalia, who had both guaranteed the GSA, knew of this fact.

After receiving the assignment of Panamerican's interests in the GSA, Preferred was ready, willing, and able to supply Diamond Shamrock and/or Valero-branded gasoline to Krishna Krupa, but Krishna Krupa refused to accept delivery of gasoline from it. Preferred notified Krishna Krupa that it was Krishna Krupa's authorized exclusive gasoline supplier and provided Krishna Krupa with the necessary paperwork to begin the supply of gasoline to the gas station. Hossain also notified Krishna Krupa's principals that Panamerican had assigned its rights under the GSA to Preferred and that the assignment of the GSA to Preferred rendered Preferred as Krishna Krupa's authorized exclusive gasoline supplier. However, Krishna Krupa, by and through its principals Savalia and Gajera, represented to Preferred that it had an exclusive gasoline supply contract with USA Fuel, not Preferred, and it thus had no obligation to purchase gasoline from Preferred.

Although the gas station was imaged as a Diamond Shamrock gas station, Krishna Krupa then opened the gas station for business, selling unbranded gasoline that it had purchased not from Preferred, but from TOP and/or Classic. This violated Diamond Shamrock's branding agreement, and Diamond Shamrock thus stripped the gas station of all Diamond Shamrock brand signage and images. Preferred nevertheless made every effort to salvage the situation by trying to re-brand the gas station as Diamond Shamrock, but Diamond Shamrock declined to do so because Krishna Krupa

had commingled Diamond Shamrock gasoline with an unbranded gasoline product that it had purchased through Classic.

## Causes of Action

Preferred initially sought a declaratory judgment against Krishna Krupa and Panamerican that (1) Preferred has the exclusive right to sell gasoline to Krishna Krupa under the GSA; (2) Krishna Krupa was obligated to purchase gasoline exclusively and solely from Preferred during the term of the GSA; and (3) Preferred, under the assignment and for consideration paid, acquired all rights and interests to exclusively supply gasoline under the GSA to Krishna Krupa. Preferred also asserted a breach of contract cause of action against Krishna Krupa.

Preferred alleged claims for breach of guarantee and tortious interference with a contractual relationship against Savalia and Gajera. Preferred also alleged claims for tortious interference with a contractual relationship against Amidhara, TOP, and Classic. Preferred asserted claims for common-law fraud and fraudulent misrepresentation, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act (DTPA) against Hossain, Panamerican LLC, Panamerican Inc., and USA Developers (collectively, the Panamerican defendants).[2]

---

[2] In both their no-evidence and traditional motions for summary judgment, the Panamerican defendants treat fraudulent concealment and unjust enrichment as independent causes of action. However, as noted by Preferred in its brief, these are not independent causes of action. *See R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action."); *Argyle ISD ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.) (same); *Carone v. Retamco Operating, Inc.,* 138 S.W.3d 1, 10 (Tex. App.—San Antonio 2004, pet. denied) ("Fraudulent concealment . . . is not an independent cause of action.").

## Motions for Summary Judgment & Trial Court Rulings

Krishna Krupa first moved for what appears to be a traditional summary judgment, asserting that, as a matter of law, the GSA did not set out an exclusive arrangement or require Krishna Krupa to purchase fuel solely from Preferred. Thereafter, the Panamerican defendants filed both no-evidence and traditional motions for summary judgment. In their no-evidence motion, they challenged whether there was evidence to support any of the elements of any of the causes of action alleged against them. In their traditional motion, they stated that the GSA did not set out an exclusive agreement nor did it require Krishna Krupa to buy fuel solely from Preferred; therefore, all of Preferred's causes of action against them must fail. After a hearing on the motions, the trial court granted summary judgments in favor of all ten defendants.

## AMIDHARA, SAVALIA, GAJERA, TOP & CLASSIC

In its first issue, Preferred contends that the trial court erred in granting summary judgments for Amidhara, Savalia, Gajera, TOP, and Classic because none of them moved for summary judgment.

In *Teer v. Duddlesten*, 664 S.W.2d 702, 702-03 (Tex. 1984) (op. on reh'g), two of the City of Bellaire's co-defendants moved for summary judgment, which the trial court granted. The trial court's judgment, however, was drawn as a final judgment for all three defendants, despite the fact that the City "filed no motion, gave no notice, produced no affidavits, and made no showing." *Id.* The supreme court subsequently reversed the trial court's judgment, holding that it was error to render a final judgment for the City when it had made no motion for summary judgment. *Id.* at 702; *accord Sw.*

*Invs. Diversified, Inc. v. Estate of Mieszkuc*, 171 S.W.3d 461, 468 n.15 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 116 (Tex. App.—Waco 1999, no pet.) ("A trial court cannot grant summary judgment for a party which has not filed a motion therefor.").

In this case, like the City in *Teer*, Amidhara, Savalia, and Gajera filed no motion for summary judgment, gave no notice, produced no evidence, and did not participate in a summary judgment hearing; thus, the trial court erred in rendering summary judgment in their favor. Similarly, Classic and TOP filed no motion for summary judgment and gave no notice, but they contend that *Teer* is distinguishable because, unlike the City which "did nothing" and "made no showing," they appeared and argued at the hearing on the motions for summary judgment filed by Krishna Krupa and the Panamerican defendants. *See Teer*, 664 S.W.2d at 703. Classic and TOP argue that they merely failed to file a written motion and to give notice, neither of which were objected to by any party. However, we conclude that *Teer* cannot be distinguished based on the limited arguments made by Classic and TOP at the hearing on the motions for summary judgment filed by Krishna Krupa and the Panamerican defendants. The trial court thus erred in rendering summary judgment in favor of Classic and TOP because neither moved for summary judgment. *See id.* at 702. We sustain Preferred's first issue.

## KRISHNA KRUPA, HOSSAIN, PANAMERICAN LLC, PANAMERICAN INC. & USA DEVELOPERS

In its second issue, Preferred contends that the trial court erred in granting summary judgments for Krishna Krupa and the Panamerican defendants.

### Standard of Review

The standard of review in traditional summary judgment cases is well settled. The issue on appeal is whether the movant met its summary judgment burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. PROC. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A defendant may meet this burden by conclusively negating an essential element of the plaintiff's case or conclusively establishing all of the necessary elements of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 223; *Science Spectrum, Inc.*, 941 S.W.2d at 911. When the trial court does not specify the grounds upon which it ruled, the traditional summary judgment may be affirmed if any of the grounds stated in the motion is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832-33 (Tex. App.—Dallas 2000, no pet.). After an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682-83 (Tex. App.—Dallas 2000, no pet.). Once a proper motion is filed, the burden shifts to the nonmoving party to present evidence raising any issues of material fact. *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 890-91 (Tex. App.—Dallas 2003, no pet.). We review the evidence in the light most favorable to the nonmovant. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002).

A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711.

When a successful summary judgment movant presents both traditional and no-evidence grounds, we must uphold the summary judgment if it can be sustained under

either method.  *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 517 (Tex. App.—Dallas 2007, no pet.).

## Krishna Krupa

Preferred contends that the trial court erred in granting summary judgment in favor of Krishna Krupa because the GSA unambiguously required Krishna Krupa to purchase all of the gas station's gasoline from Preferred.  We disagree.

In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document.  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005).  We consider the entire writing and attempt to harmonize and give effect to all the contract's provisions so that none are rendered meaningless.  *Id.* at 312; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  Contract terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense.  *Dynegy Midstream Servs., L.P. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Heritage Res., Inc. v. Nations Bank*, 939 S.W.2d 118, 121 (Tex. 1996).

Preferred argues that the GSA unambiguously required Krishna Krupa to purchase all of the gas station's gasoline from it because the GSA states, "WHOLESELLER [sic] shall deliver the gasoline at *Diamond Shamrock Station#1380, located at 1624 West Waco Drive, Waco, Texas.*"  Preferred reasons that, if the parties had intended for the contract to be nonexclusive, the agreement would have stated "that the specified wholesaler shall deliver the gasoline at the gas station *if Krishna Krupa decides to buy the gasoline from the specified wholesaler*" or "that the specified wholesaler *and/or*

*some other wholesaler of Krishna Krupa's choosing* shall deliver the gasoline at the gas station." However, this interpretation of the contract ignores the heading immediately above the relevant contract provision, which states "POINT OF DELIVERY." When the heading is considered together with the contract provision, it becomes clear that the parties simply intended for the provision to specify where any gasoline supplied by Preferred must be delivered, not that Preferred is the sole supplier of gasoline to the gas station.

We turn then to Preferred's alternative argument that the GSA is ambiguous and that its interpretation was thus a fact issue improper for summary judgment.

Whether a contract is ambiguous is a legal question for the court. *Dynegy Midstream Servs.*, 294 S.W.3d at 168. If the written instrument is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Dynegy Midstream Servs.*, 294 S.W.3d at 168. A contract is not ambiguous simply because the parties disagree over its meaning. *Id.* If the contract is ambiguous, summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394.

Nowhere in the GSA does it state that it is an exclusive fuel supply agreement. Under the section of the GSA entitled "PRODUCT PRICE TERMS," it states,

> During the term of this contact [sic], the product price to [Krishna Krupa] will be one and one-half (1.5c) cents over the "Rack Price" (as the term is understood in the industry) . . . . [Krishna Krupa] must purchase a

volume of 40,000 gallons of fuel per month, for the one and one-half cents per gallon price to stay in effect till the end of the contract duration.

However, purchasing 40,000 gallons of fuel per month is not a minimum requirement. The result if the volume of fuel purchased falls below 40,000 gallons of fuel per month is simply that "the price per gallon will be adjusted up to two (2.0c) cents per gallon over 'Rack Price'." The GSA does not state that Krishna Krupa must purchase a minimum volume of fuel per month. This supports interpreting the GSA as a nonexclusive fuel supply agreement.

On the other hand, nowhere in the GSA does it state that it is a nonexclusive fuel supply agreement. In fact, the GSA provides Preferred extensive authority to inspect Krishna Krupa's records in relation to the gas station's motor fuel dispensing operation. The GSA includes a term requiring Krishna Krupa to fax the tank readings, stick readings and meter readings to Preferred *daily*, if requested. The GSA also contains a section entitled "INSPECION [sic] OF RECORDS: AUDIT," which states as follows:

> [Krishna Krupa] acknowledges that [Preferred] and OIL CO have the right to inspect [Krishna Krupa]'s operation of the motor fuel dispensing business conducted at the premises, and in particular have the right to verify that [Krishna Krupa] is complying with all its contractual obligations contained in this agreement. [Krishna Krupa] agrees that in order to verify standards compliance, [Preferred] and OIL CO shall be allowed to freely review all station records, including, but not limited to, all records, deliveries, sales, and inventory reconciliation. [Krishna Krupa] also agrees that [Preferred] and OIL CO may, at any time upon notice, conduct walk-through and visual inspections of the premises.

One could reasonably conclude that these terms would not be included in the GSA if it "[did] not require any purchase nor [did] it limit Krishna Krupa's rights to purchase

fuel from other sources," as Krishna Krupa contended in its motion for summary judgment.

Because its meaning is uncertain, doubtful, and reasonably susceptible to more than one interpretation, we conclude that the GSA is ambiguous. Moreover, since the GSA is ambiguous, summary judgment as to the declaratory judgment and breach of contract claims against Krishna Krupa was improper; the interpretation of the GSA is a fact issue. *See Coker*, 650 S.W.2d at 394. We sustain Preferred's second issue to the extent it challenges the trial court's granting of summary judgment in favor of Krishna Krupa.

### Hossain, Panamerican LLC, Panamerican Inc. & USA Developers

Preferred next argues that the trial court erred in granting both the traditional and no-evidence summary judgments in favor of the Panamerican defendants.

### *Declaratory Judgment*

The Panamerican defendants moved for summary judgment on Preferred's cause of action for a declaratory judgment, arguing that the GSA did not set out an exclusive agreement, nor did it require Krishna Krupa to buy fuel only from Preferred. However, for the reasons explained above, the GSA is ambiguous as to whether it is an exclusive agreement, and its interpretation is thus a fact issue. *See Coker*, 650 S.W.2d at 394. Therefore, the trial court erred in granting summary judgment against Preferred on its declaratory judgment cause of action.

### *Common-Law Fraud and Fraudulent Misrepresentation*

A fraud claim is comprised of the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act upon it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury. *Matis v. Golden*, 228 S.W.3d 301, 305-06 (Tex. App.—Waco 2007, no pet.). The Panamerican defendants challenged all of these elements in their no-evidence motion. In their traditional motion, they stated that they are entitled to judgment as a matter of law because they did not misrepresent any information to Preferred.

*Defendant made a material representation*: Preferred presented evidence that in early 2006, it entered into negotiations to purchase and seek assignment of twenty fuel contracts, including the GSA, from Panamerican Inc. On behalf of Preferred, shareholders and principal owners Aziz Dharani and Salim Dossani attended several meetings with Hossain as a representative for Panamerican Inc. During these meetings, Hossain stated that all twenty fuel contracts, including the GSA, were exclusive gasoline supply contracts and that, under these contracts, the twenty retail gas stations involved could only purchase fuel and petroleum products from Panamerican Inc. Hossain further stated that the sale of the underlying real estate to the various buyers, including that of the gas station in this case, had been contingent upon the buyers executing exclusive gasoline supply agreements with Panamerican Inc.

Preferred presented evidence that, as a result, and relying on Hossain's representations, it agreed to purchase the twenty fuel supply agreements, including the GSA, from Panamerican Inc. for a substantial price. USA Developers and Panamerican Inc. were both parties to the Agreement for Sale & Purchase of Motor Fuel Supply Contract(s), with Hossain signing on behalf of each.

Preferred presented evidence that, subsequent to signing the purchase and sale agreement, Preferred also executed an Assignment and Assumption Agreement for the twenty gasoline supply agreements and that, leading up to its execution, Hossain again stated and reinforced that all twenty gasoline supply agreements that Preferred purchased were exclusive. The Assignment and Assumption Agreement was signed by Dharani as president of Preferred and Hossain as president of Panamerican LLC.

Based on this evidence, there is a genuine issue of material fact as to whether the Panamerican defendants made a material representation to Preferred. *See NationsBank v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996) (stating that a principal may be vicariously liable for the fraudulent conduct of its agent if the agent acted with actual or apparent authority); *Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied) ("The law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation."); *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727 (Tex. App.—Waco 1998, pet. denied) ("A misrepresentation is material if it induces a party to enter a contract.").

*The representation was false*: In their traditional motion, the Panamerican defendants take the position that the "contract does *not* set out an exclusive agreement between the parties nor require Krishna Krupa to buy fuel from Plaintiff only." (Emphasis added.) Furthermore, Preferred produced the GSA as evidence, and we have already concluded that the GSA is ambiguous as to whether it is an exclusive fuel supply agreement and that its interpretation is thus a fact issue. Thus, there is a genuine issue of material fact as to whether the representation was false.

*When defendant made the representation, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion*: Preferred presented testimony from Hossain's deposition in which he indicated that the GSA was an exclusive agreement. However, the Panamerican defendants' traditional motion stated that the GSA is unambiguous in that it does *not* set out an exclusive agreement between the parties nor require Krishna Krupa to buy fuel from Preferred only. Thus, there is a genuine issue of material fact as to whether the Panamerican defendants made the representations knowing they were false or made them recklessly without any knowledge of their truth and as positive assertions.

*Defendant made the representation with the intent that plaintiff should act upon it*: Preferred presented evidence that Hossain made the representations during the meetings in which Preferred was negotiating to purchase the twenty fuel contracts and then reinforced the representations just before the execution of the Assignment and Assumption Agreement. This is sufficient to raise a genuine issue of material fact as to

whether the Panamerican defendants made the representations with the intent that Preferred act upon them.

*Plaintiff acted in reliance on the representation*:  The plaintiff's reliance must be both actual and justifiable.  *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 225-26 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  Preferred presented evidence that, as a result, and relying on the representations Hossain made, it agreed to purchase the twenty fuel supply agreements, including the GSA, for a substantial price.  Preferred also presented evidence that, in this industry, fuel contracts like the GSA are generally exclusive to prevent commingling of petroleum products with other branded and unbranded petroleum products and to enforce compliance with the Federal Petroleum Marketing Practices Act.  Thus, Preferred has raised a genuine issue of material fact as to whether it acted in reliance on the representations.

*Plaintiff thereby suffered injury*:  Preferred presented evidence that once it acquired the twenty gasoline supply agreements, including the GSA, Krishna Krupa, the owner of the gas station, never purchased any petroleum products from Preferred and that this failure to purchase fuel from Preferred caused substantial damage, including loss of profits, which continue to incur.  Thus, Preferred has raised a genuine issue of material fact as to whether it suffered injury because of the representations.

Because a genuine issue of material fact exists as to every element of Preferred's claim for common-law fraud and fraudulent misrepresentation, the trial court erred in granting summary judgment in favor of the Panamerican defendants on the cause of action, and, to that extent, Preferred's second issue is sustained.

*Negligent Misrepresentation*

The elements of negligent misrepresentation are: (1) a defendant provided information in the course of his business, or in a transaction in which he had a pecuniary interest; (2) the information supplied was false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the information; and (5) the plaintiff suffered damages proximately caused by the reliance. *Larsen v. Carlene Langford & Assocs.*, 41 S.W.3d 245, 249-50 (Tex. App.—Waco 2001, pet. denied). The Panamerican defendants challenged all of these elements in their no-evidence motion. In their traditional motion, they stated that they are entitled to judgment as a matter of law because they did not supply false information to Preferred.

Based on all the evidence detailed above with regard to Preferred's cause of action for common-law fraud and fraudulent misrepresentation, a genuine issue of material fact exists as to every element of Preferred's claim for negligent misrepresentation. Thus the trial court also erred in granting summary judgment in favor of the Panamerican defendants on Preferred's negligent misrepresentation cause of action.

*Violation of the DTPA*

Although Preferred states generally in its brief that the Panamerican defendants were not entitled to summary judgment on either of their motions, Preferred does not make any specific argument regarding the granting of summary judgment in favor of the Panamerican defendants on Preferred's cause of action for violation of the DTPA.

"The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). A brief's issues that do not contain such argument "are inadequately briefed and present nothing for review." *Dorton v. Chase*, 262 S.W.3d 396, 400 (Tex. App.—Waco 2008, pet. denied); *see* TEX. R. APP. P. 38.1(h), (i). Preferred fails to point to any specific evidence in the record that might raise a genuine issue of material fact as to the essential elements of its DTPA claim. Thus, to the extent Preferred challenges the trial court's granting of summary judgment in favor of the Panamerican defendants on Preferred's cause of action for violation of the DTPA, Preferred's second issue is inadequately briefed, presents nothing for review, and is overruled.

## CONCLUSION

We reverse that portion of the trial court's judgment granting summary judgment in favor of Amidhara, Savalia, Gajera, TOP, Classic, and Krishna Krupa; we reverse that portion of the trial court's judgment granting summary judgment on Preferred's declaratory judgment, common-law fraud and fraudulent misrepresentation, and negligent misrepresentation claims against Hossain, Panamerican LLC, Panamerican Inc., and USA Developers. We remand this cause to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.


REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Reyna, and
  Justice Davis
Affirmed in part; reversed and remanded in part
Opinion delivered and filed January 13, 2010
[CV06]