IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00122-CV

 

Preferred Fuel Distributors, LP,

                                                                                    Appellant

 v.

 

Amidhara, LLC, et al.,

                                                                                    Appellee

 

 

 



From the 19th District
Court

McLennan County, Texas

Trial Court No. 2006-1396-1

 



MEMORANDUM  Opinion



 








Preferred Fuel Distributors, L.P.
(Preferred) appeals the trial court’s summary judgments in favor of Amidhara,
L.L.C. (Amidhara), Bhaveshkumar P. Savalia a/k/a Bhavesh Savalia (Savalia),
Kamlesh Limbabhai Gajera a/k/a Kamlesh Gajera (Gajera), Krishna Krupa, Inc. (Krishna
Krupa), Texas Oil Products, Inc. (TOP), Classic Star Group, LP f/k/a Classic
Star Group, Inc. (Classic), Chowdhury M. Hossain a/k/a Tippoo Hossain or Sam S.
Hossain (Hossain), Panamerican Fuel Distributors, LLC (Panamerican LLC),
Panamerican Fuel Distributors, Inc. (Panamerican Inc.), and USA Developers, LLC
(USA Developers).  We will affirm in part and reverse and remand in part.

BACKGROUND

            USA Developers sold a
Diamond Shamrock gas station to Krishna Krupa.  The Purchase and Sale Agreement
signed by the parties states in pertinent part:

“Gasoline Supply Agreement” means, as a part of this Agreement.  Buyer
shall execute a separate agreement with the Seller for supply of petroleum fuel
products to the subject location. Seller shall furnish the “Gasoline Supply
Agreement” within 5 days of the execution of this agreement for Buyer to
review.  Buyer must accept or reject the GSA prior to expiration of the
Inspection Period. This Purchase and Sale Agreement of the property is
contingent upon acceptance of the Gasoline Supply Agreement by the Buyer and
shall be enforceable if the sale closes.

 

Thereafter, Krishna Krupa entered into a
Gasoline Supply Agreement (GSA) with USA Fuel Distributors, LLC (USA Fuel). 
USA Fuel’s interests in the GSA were later acquired by Panamerican LLC and then
assigned to Preferred.  Preferred subsequently filed suit against Amidhara,
Savalia, Gajera, Krishna Krupa, TOP, Classic, Hossain, Panamerican LLC, Panamerican
Inc., and USA Developers.

The Allegations

            Preferred made the following
allegations in its live petition:  When USA Fuel and Panamerican[1]
had each possessed the rights and obligations under the GSA, Krishna Krupa had
been obligated to exclusively purchase gasoline from them.  Hossain,
Panamerican’s principal and the person who assigned Panamerican’s rights under
the GSA to Preferred, had represented to Preferred that Panamerican was Krishna
Krupa’s exclusive gasoline supplier.  Krishna Krupa and its principals, Gajera
and Savalia, who had both guaranteed the GSA, knew of this fact.

After receiving the assignment of
Panamerican’s interests in the GSA, Preferred was ready, willing, and able to
supply Diamond Shamrock and/or Valero-branded gasoline to Krishna Krupa, but Krishna
Krupa refused to accept delivery of gasoline from it.  Preferred notified
Krishna Krupa that it was Krishna Krupa’s authorized exclusive gasoline
supplier and provided Krishna Krupa with the necessary paperwork to begin the
supply of gasoline to the gas station.  Hossain also notified Krishna Krupa’s principals
that Panamerican had assigned its rights under the GSA to Preferred and that
the assignment of the GSA to Preferred rendered Preferred as Krishna Krupa’s
authorized exclusive gasoline supplier.  However, Krishna Krupa, by and through
its principals Savalia and Gajera, represented to Preferred that it had an
exclusive gasoline supply contract with USA Fuel, not Preferred, and it thus
had no obligation to purchase gasoline from Preferred.

            Although the gas station was
imaged as a Diamond Shamrock gas station, Krishna Krupa then opened the gas
station for business, selling unbranded gasoline that it had purchased not from
Preferred, but from TOP and/or Classic.  This violated Diamond Shamrock’s
branding agreement, and Diamond Shamrock thus stripped the gas station of all
Diamond Shamrock brand signage and images.  Preferred nevertheless made every
effort to salvage the situation by trying to re-brand the gas station as
Diamond Shamrock, but Diamond Shamrock declined to do so because Krishna Krupa
had commingled Diamond Shamrock gasoline with an unbranded gasoline product
that it had purchased through Classic.

Causes of Action

            Preferred initially sought a
declaratory judgment against Krishna Krupa and Panamerican that (1) Preferred
has the exclusive right to sell gasoline to Krishna Krupa under the GSA; (2) Krishna
Krupa was obligated to purchase gasoline exclusively and solely from Preferred
during the term of the GSA; and (3) Preferred, under the assignment and for
consideration paid, acquired all rights and interests to exclusively supply
gasoline under the GSA to Krishna Krupa.  Preferred also asserted a breach of
contract cause of action against Krishna Krupa.

            Preferred alleged claims for
breach of guarantee and tortious interference with a contractual relationship
against Savalia and Gajera.  Preferred also alleged claims for tortious
interference with a contractual relationship against Amidhara, TOP, and Classic. 
Preferred asserted claims for common-law fraud and fraudulent
misrepresentation, negligent misrepresentation, and violation of the Texas
Deceptive Trade Practices Act (DTPA) against Hossain, Panamerican LLC,
Panamerican Inc., and USA Developers (collectively, the Panamerican defendants).[2]


Motions
for Summary Judgment & Trial Court Rulings

            Krishna Krupa first
moved for what appears to be a traditional summary judgment, asserting that, as
a matter of law, the GSA did not set out an exclusive arrangement or require
Krishna Krupa to purchase fuel solely from Preferred.  Thereafter, the Panamerican
defendants filed both no-evidence and traditional motions for summary judgment. 
In their no-evidence motion, they challenged whether there was evidence to
support any of the elements of any of the causes of action alleged against them. 
In their traditional motion, they stated that the GSA did not set out an
exclusive agreement nor did it require Krishna Krupa to buy fuel solely from
Preferred; therefore, all of Preferred’s causes of action against them must
fail.  After a hearing on the motions, the trial court granted summary
judgments in favor of all ten defendants.  

AMIDHARA,
SAVALIA, GAJERA, TOP & CLASSIC

            In its first
issue, Preferred contends that the trial court erred in granting summary
judgments for Amidhara, Savalia, Gajera, TOP, and Classic because none of them
moved for summary judgment.

            In Teer v. Duddlesten,
664 S.W.2d 702, 702-03 (Tex. 1984) (op. on reh’g), two of the City of
Bellaire’s co-defendants moved for summary judgment, which the trial court
granted.  The trial court’s judgment, however, was drawn as a final judgment
for all three defendants, despite the fact that the City “filed no motion, gave
no notice, produced no affidavits, and made no showing.”  Id.  The
supreme court subsequently reversed the trial court’s judgment, holding that it
was error to render a final judgment for the City when it had made no motion
for summary judgment.  Id. at 702; accord Sw. Invs. Diversified, Inc.
v. Estate of Mieszkuc, 171 S.W.3d 461, 468 n.15 (Tex. App.—Houston [14th
Dist.] 2005, no pet.); Williams v. Bank One, Tex., N.A., 15 S.W.3d 110,
116 (Tex. App.—Waco 1999, no pet.) (“A trial court cannot grant summary
judgment for a party which has not filed a motion therefor.”).

            In this case, like the City
in Teer, Amidhara, Savalia, and Gajera filed no motion for summary
judgment, gave no notice, produced no evidence, and did not participate in a
summary judgment hearing; thus, the trial court erred in rendering summary
judgment in their favor.  Similarly, Classic and TOP filed no motion for summary
judgment and gave no notice, but they contend that Teer is
distinguishable because, unlike the City which “did nothing” and “made no
showing,” they appeared and argued at the hearing on the motions for summary
judgment filed by Krishna Krupa and the Panamerican defendants.  See Teer,
664 S.W.2d at 703.  Classic and TOP argue that they merely failed to
file a written motion and to give notice, neither of which were objected to by
any party.  However, we conclude that Teer cannot be distinguished based
on the limited arguments made by Classic and TOP at the hearing on the motions
for summary judgment filed by Krishna Krupa and the Panamerican defendants. 
The trial court thus erred in rendering summary judgment in favor of Classic
and TOP because neither moved for summary judgment.  See id. at 702.  We
sustain Preferred’s first issue.

KRISHNA KRUPA, HOSSAIN, PANAMERICAN LLC,


PANAMERICAN INC. & USA DEVELOPERS

 

In its
second issue, Preferred contends that the trial court erred in granting summary
judgments for Krishna Krupa and the Panamerican defendants.

Standard of Review

The standard of review in traditional
summary judgment cases is well settled.  The issue on appeal is whether the
movant met its summary judgment burden of establishing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law.  Tex. R. Civ. Proc. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).  A defendant may
meet this burden by conclusively negating an essential element of the
plaintiff’s case or conclusively establishing all of the necessary elements of
an affirmative defense.  Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995).

            When reviewing a traditional
summary judgment, we take as true all evidence favorable to the nonmovant.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  We indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.  Rhone-Poulenc,
Inc., 997 S.W.2d at 223; Science Spectrum, Inc., 941 S.W.2d at 911. 
When the trial court does not specify the grounds upon which it ruled, the traditional
summary judgment may be affirmed if any of the grounds stated in the motion is
meritorious.  W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).

            We review a no-evidence
summary judgment under the same legal sufficiency standard used to review a
directed verdict.  See Tex. R.
Civ. P. 166a(i); Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12
S.W.3d 827, 832-33 (Tex. App.—Dallas 2000, no pet.).  After an adequate time
for discovery has passed, a party without the burden of proof at trial may move
for summary judgment on the ground that the nonmoving party lacks supporting
evidence for one or more essential elements of its claim.  See Tex. R. Civ. P. 166a(i); Espalin v.
Children’s Med. Ctr. of Dallas, 27 S.W.3d 675, 682-83 (Tex. App.—Dallas
2000, no pet.).  Once a proper motion is filed, the burden shifts to the
nonmoving party to present evidence raising any issues of material fact.  Murray
v. Ford Motor Co., 97 S.W.3d 888, 890-91 (Tex. App.—Dallas 2003, no pet.). 
We review the evidence in the light most favorable to the nonmovant.  See
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 208 (Tex. 2002). 

            A no-evidence summary
judgment is properly granted if the nonmovant fails to bring forth more than a
scintilla of probative evidence to raise a genuine issue of material fact as to
an essential element of the nonmovant’s claim on which the nonmovant would have
the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i); Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).  If the evidence supporting a finding rises to a
level that would enable reasonable, fair-minded persons to differ in their
conclusions, then more than a scintilla of evidence exists.  Havner, 953
S.W.2d at 711.

            When a successful summary
judgment movant presents both traditional and no-evidence grounds, we must
uphold the summary judgment if it can be sustained under either method.  Bradford
Partners II, L.P. v. Fahning, 231 S.W.3d 513, 517 (Tex. App.—Dallas 2007,
no pet.).

Krishna
Krupa

Preferred contends
that the trial court erred in granting summary judgment in favor of Krishna
Krupa because the GSA unambiguously required Krishna Krupa to purchase all of
the gas station’s gasoline from Preferred.  We disagree.

In construing a written contract, the
primary concern is to ascertain and give effect to the parties’ intentions as
expressed in the document.  Frost Nat’l Bank v. L & F Distribs., Ltd.,
165 S.W.3d 310, 311-12 (Tex. 2005).  We consider the entire writing and attempt
to harmonize and give effect to all the contract’s provisions so that none are
rendered meaningless.  Id. at 312; J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003).  Contract terms are given their plain,
ordinary, and generally accepted meaning, unless the instrument shows the
parties used them in a technical or different sense.  Dynegy Midstream
Servs., L.P. v. Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009); Heritage
Res., Inc. v. Nations Bank, 939 S.W.2d 118, 121 (Tex. 1996).

Preferred argues that the GSA
unambiguously required Krishna Krupa to purchase all of the gas station’s
gasoline from it because the GSA states, “WHOLESELLER [sic] shall deliver the
gasoline at Diamond Shamrock Station#1380, located at 1624 West Waco Drive,
Waco, Texas.”  Preferred reasons that, if the parties had intended for the
contract to be nonexclusive, the agreement would have stated “that the
specified wholesaler shall deliver the gasoline at the gas station if
Krishna Krupa decides to buy the gasoline from the specified wholesaler” or
“that the specified wholesaler and/or some other wholesaler of Krishna
Krupa’s choosing shall deliver the gasoline at the gas station.”  However, this
interpretation of the contract ignores the heading immediately above the relevant
contract provision, which states “POINT OF DELIVERY.”  When the heading is
considered together with the contract provision, it becomes clear that the
parties simply intended for the provision to specify where any gasoline
supplied by Preferred must be delivered, not that Preferred is the sole
supplier of gasoline to the gas station.

We turn then to Preferred’s alternative
argument that the GSA is ambiguous and that its interpretation was thus a fact
issue improper for summary judgment.

Whether a contract is ambiguous is a
legal question for the court.  Dynegy Midstream Servs., 294 S.W.3d at
168.  If the written instrument is so worded that it can be given a definite or
certain legal meaning, then it is not ambiguous.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.  Dynegy Midstream Servs., 294 S.W.3d at 168.  A contract
is not ambiguous simply because the parties disagree over its meaning.  Id. 
If the contract is ambiguous, summary judgment is improper because the
interpretation of the instrument becomes a fact issue.  Coker, 650
S.W.2d at 394.

Nowhere in the GSA does it state that it
is an exclusive fuel supply agreement.  Under the section of the GSA entitled
“PRODUCT PRICE TERMS,” it states, 

During the term of this contact [sic],
the product price to [Krishna Krupa] will be one and one-half (1.5c) cents over
the “Rack Price” (as the term is understood in the industry) . . . .  [Krishna
Krupa] must purchase a volume of 40,000 gallons of fuel per month, for the one
and one-half cents per gallon price to stay in effect till the end of the contract
duration. 

 

However, purchasing 40,000 gallons of
fuel per month is not a minimum requirement.  The result if the volume of fuel
purchased falls below 40,000 gallons of fuel per month is simply that “the
price per gallon will be adjusted up to two (2.0c) cents per gallon over ‘Rack
Price’.”  The GSA does not state that Krishna Krupa must purchase a minimum
volume of fuel per month.  This supports interpreting the GSA as a nonexclusive
fuel supply agreement.

On the other hand, nowhere in the GSA
does it state that it is a nonexclusive fuel supply agreement.  In fact, the
GSA provides Preferred extensive authority to inspect Krishna Krupa’s records
in relation to the gas station’s motor fuel dispensing operation.  The GSA
includes a term requiring Krishna Krupa to fax the tank readings, stick
readings and meter readings to Preferred daily, if requested.  The GSA
also contains a section entitled “INSPECION [sic] OF RECORDS: AUDIT,” which
states as follows:

[Krishna Krupa] acknowledges that
[Preferred] and OIL CO have the right to inspect [Krishna Krupa]’s operation of
the motor fuel dispensing business conducted at the premises, and in particular
have the right to verify that [Krishna Krupa] is complying with all its
contractual obligations contained in this agreement.  [Krishna Krupa] agrees
that in order to verify standards compliance, [Preferred] and OIL CO shall be
allowed to freely review all station records, including, but not limited to,
all records, deliveries, sales, and inventory reconciliation.  [Krishna Krupa]
also agrees that [Preferred] and OIL CO may, at any time upon notice, conduct
walk-through and visual inspections of the premises.

 

One could reasonably conclude that these
terms would not be included in the GSA if it “[did] not require any purchase
nor [did] it limit Krishna Krupa’s rights to purchase fuel from other sources,”
as Krishna Krupa contended in its motion for summary judgment.

Because its meaning is uncertain,
doubtful, and reasonably susceptible to more than one interpretation, we conclude
that the GSA is ambiguous.  Moreover, since the GSA is ambiguous, summary
judgment as to the declaratory judgment and breach of contract claims against
Krishna Krupa was improper; the interpretation of the GSA is a fact issue.  See
Coker, 650 S.W.2d at 394.  We sustain Preferred’s second issue to the
extent it challenges the trial court’s granting of summary judgment in favor of
Krishna Krupa.

Hossain, Panamerican LLC, Panamerican
Inc. & USA Developers

Preferred next argues that the trial
court erred in granting both the traditional and no-evidence summary judgments in
favor of the Panamerican defendants.

Declaratory Judgment

            The Panamerican defendants
moved for summary judgment on Preferred’s cause of action for a declaratory
judgment, arguing that the GSA did not set out an exclusive agreement, nor did
it require Krishna Krupa to buy fuel only from Preferred.  However, for the
reasons explained above, the GSA is ambiguous as to whether it is an exclusive
agreement, and its interpretation is thus a fact issue.  See Coker, 650
S.W.2d at 394.  Therefore, the trial court erred in granting summary judgment
against Preferred on its declaratory judgment cause of action.

Common-Law Fraud and Fraudulent
Misrepresentation

A fraud claim is comprised of the
following elements:  (1) the defendant made a material representation; (2) the
representation was false; (3) when the defendant made the representation, he
knew it was false or made it recklessly without any knowledge of its truth and
as a positive assertion; (4) the defendant made the representation with the
intent that the plaintiff should act upon it; (5) the plaintiff acted in
reliance on the representation; and (6) the plaintiff thereby suffered injury. 
Matis v. Golden, 228 S.W.3d 301, 305-06 (Tex. App.—Waco 2007, no pet.). 
The Panamerican defendants challenged all of these elements in their
no-evidence motion.  In their traditional motion, they stated that they are
entitled to judgment as a matter of law because they did not misrepresent any
information to Preferred.

Defendant made a material representation:  Preferred presented evidence that in
early 2006, it entered into negotiations to purchase and seek assignment of
twenty fuel contracts, including the GSA, from Panamerican Inc.  On behalf of Preferred,
shareholders and principal owners Aziz Dharani and Salim Dossani attended
several meetings with Hossain as a representative for Panamerican Inc.  During
these meetings, Hossain stated that all twenty fuel contracts, including the
GSA, were exclusive gasoline supply contracts and that, under these contracts,
the twenty retail gas stations involved could only purchase fuel and petroleum
products from Panamerican Inc.  Hossain further stated that the sale of the
underlying real estate to the various buyers, including that of the gas station
in this case, had been contingent upon the buyers executing exclusive gasoline
supply agreements with Panamerican Inc.

Preferred presented evidence that, as a
result, and relying on Hossain’s representations, it agreed to purchase the
twenty fuel supply agreements, including the GSA, from Panamerican Inc. for a
substantial price.  USA Developers and Panamerican Inc. were both parties to
the Agreement for Sale & Purchase of Motor Fuel Supply Contract(s), with Hossain
signing on behalf of each.

Preferred presented evidence that, subsequent
to signing the purchase and sale agreement, Preferred also executed an Assignment
and Assumption Agreement for the twenty gasoline supply agreements and that, leading
up to its execution, Hossain again stated and reinforced that all twenty
gasoline supply agreements that Preferred purchased were exclusive.  The
Assignment and Assumption Agreement was signed by Dharani as president of
Preferred and Hossain as president of Panamerican LLC.

Based on this evidence, there is a
genuine issue of material fact as to whether the Panamerican defendants made a
material representation to Preferred.  See NationsBank v. Dilling, 922
S.W.2d 950, 952-53 (Tex. 1996) (stating that a principal may be vicariously
liable for the fraudulent conduct of its agent if the agent acted with actual
or apparent authority); Kingston v. Helm, 82 S.W.3d 755, 759 (Tex.
App.—Corpus Christi 2002, pet. denied) (“The law is well-settled that a
corporate agent can be held individually liable for fraudulent statements or
knowing misrepresentations even when they are made in the capacity of a
representative of the corporation.”); Brush v. Reata Oil & Gas Corp.,
984 S.W.2d 720, 727 (Tex. App.—Waco 1998, pet. denied) (“A misrepresentation is
material if it induces a party to enter a contract.”).

The representation was false:  In their traditional motion, the
Panamerican defendants take the position that the “contract does not set
out an exclusive agreement between the parties nor require Krishna Krupa to buy
fuel from Plaintiff only.”  (Emphasis added.)  Furthermore, Preferred produced
the GSA as evidence, and we have already concluded that the GSA is ambiguous as
to whether it is an exclusive fuel supply agreement and that its interpretation
is thus a fact issue.  Thus, there is a genuine issue of material fact as to
whether the representation was false.

When defendant made the representation,
he knew it was false or made it recklessly without any knowledge of its truth
and as a positive assertion: 
Preferred presented testimony from Hossain’s deposition in which he indicated
that the GSA was an exclusive agreement.  However, the Panamerican defendants’
traditional motion stated that the GSA is unambiguous in that it does not
set out an exclusive agreement between the parties nor require Krishna Krupa to
buy fuel from Preferred only.  Thus, there is a genuine issue of material fact
as to whether the Panamerican defendants made the representations knowing they
were false or made them recklessly without any knowledge of their truth and as
positive assertions.

Defendant made the representation with
the intent that plaintiff should act upon it:  Preferred presented evidence that Hossain made the
representations during the meetings in which Preferred was negotiating to
purchase the twenty fuel contracts and then reinforced the representations just
before the execution of the Assignment and Assumption Agreement.  This is
sufficient to raise a genuine issue of material fact as to whether the Panamerican
defendants made the representations with the intent that Preferred act upon
them.

Plaintiff acted in reliance on the
representation:  The
plaintiff’s reliance must be both actual and justifiable.  Atlantic Lloyds
Ins. Co. v. Butler, 137 S.W.3d 199, 225-26 (Tex. App.—Houston [1st Dist.]
2004, pet. denied).  Preferred presented evidence that, as a result, and
relying on the representations Hossain made, it agreed to purchase the twenty
fuel supply agreements, including the GSA, for a substantial price.  Preferred
also presented evidence that, in this industry, fuel contracts like the GSA are
generally exclusive to prevent commingling of petroleum products with other
branded and unbranded petroleum products and to enforce compliance with the
Federal Petroleum Marketing Practices Act.  Thus, Preferred has raised a
genuine issue of material fact as to whether it acted in reliance on the
representations.

Plaintiff thereby suffered injury:  Preferred presented evidence that
once it acquired the twenty gasoline supply agreements, including the GSA,
Krishna Krupa, the owner of the gas station, never purchased any petroleum
products from Preferred and that this failure to purchase fuel from Preferred
caused substantial damage, including loss of profits, which continue to incur. 
Thus, Preferred has raised a genuine issue of material fact as to whether it
suffered injury because of the representations.

Because a genuine issue of material fact
exists as to every element of Preferred’s claim for common-law fraud and
fraudulent misrepresentation, the trial court erred in granting summary
judgment in favor of the Panamerican defendants on the cause of action, and, to
that extent, Preferred’s second issue is sustained.

Negligent Misrepresentation

            The elements of negligent
misrepresentation are:  (1) a defendant provided information in the course of
his business, or in a transaction in which he had a pecuniary interest; (2) the
information supplied was false; (3) the defendant did not exercise reasonable
care or competence in obtaining or communicating the information; (4) the
plaintiff justifiably relied on the information; and (5) the plaintiff suffered
damages proximately caused by the reliance.  Larsen v. Carlene Langford
& Assocs., 41 S.W.3d 245, 249-50 (Tex. App.—Waco 2001, pet. denied). 
The Panamerican defendants challenged all of these elements in their
no-evidence motion.  In their traditional motion, they stated that they are
entitled to judgment as a matter of law because they did not supply false
information to Preferred.

            Based on all the evidence
detailed above with regard to Preferred’s cause of action for common-law fraud
and fraudulent misrepresentation, a genuine issue of material fact exists as to
every element of Preferred’s claim for negligent misrepresentation.  Thus the
trial court also erred in granting summary judgment in favor of the Panamerican
defendants on Preferred’s negligent misrepresentation cause of action.

Violation of the DTPA

            Although
Preferred states generally in its brief that the Panamerican defendants were
not entitled to summary judgment on either of their motions, Preferred does not
make any specific argument regarding the granting of summary judgment in favor
of the Panamerican defendants on Preferred’s cause of action for violation of
the DTPA.  “The brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the
record.”  Tex. R. App. P. 38.1(i). 
A brief’s issues that do not contain such argument “are inadequately briefed
and present nothing for review.”  Dorton v. Chase, 262 S.W.3d 396, 400
(Tex. App.—Waco 2008, pet. denied); see Tex. R. App. P. 38.1(h), (i).  Preferred fails to point to
any specific evidence in the record that might raise a genuine issue of material
fact as to the essential elements of its DTPA claim.  Thus, to the extent Preferred
challenges the trial court’s granting of summary judgment in favor of the
Panamerican defendants on Preferred’s cause of action for violation of the
DTPA, Preferred’s second issue is inadequately briefed, presents nothing for
review, and is overruled.

CONCLUSION

            We reverse that portion of
the trial court’s judgment granting summary judgment in favor of Amidhara,
Savalia, Gajera, TOP, Classic, and Krishna Krupa; we reverse that portion of
the trial court’s judgment granting summary judgment on Preferred’s declaratory
judgment, common-law fraud and fraudulent misrepresentation, and negligent
misrepresentation claims against Hossain, Panamerican LLC, Panamerican Inc.,
and USA Developers.  We remand this cause to the trial court for further
proceedings consistent with this opinion.  We affirm the trial court’s judgment
in all other respects.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed
in part; reversed and remanded in part

Opinion
delivered and filed January 13, 2010

[CV06]

 

 









[1]
Preferred does not distinguish
between Panamerican LLC and Panamerican Inc. in making these allegations in its
petition.





[2]
In both their no-evidence and traditional
motions for summary judgment, the Panamerican defendants treat fraudulent
concealment and unjust enrichment as independent causes of action.  However, as
noted by Preferred in its brief, these are not independent causes of action.  See
R.M. Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 703 (Tex. App.—Waco
2008, pet. denied) (“Unjust enrichment, itself, is not an independent cause of
action.”); Argyle ISD ex rel. Bd. of Trustees v. Wolf, 234 S.W.3d 229,
246 (Tex. App.—Fort Worth 2007, no pet.) (same); Carone v. Retamco
Operating, Inc., 138 S.W.3d 1, 10 (Tex. App.—San Antonio 2004, pet. denied)
(“Fraudulent concealment . . . is not an independent cause of action.”).